[Nos. B008756, B006445. Second Dist., Div. Three. Dec. 11, 1985.]

COMMONWEALTH LAND TITLE COMPANY,
Plaintiff and Respondent, v.
O. JOHN KORNBLUTH, Defendant and Respondent;
ISMAEL CONTRERAS et al., Third Party Claimants and Appellants.

520

## Counsel

Anderson, McPharlin & Conners, David T. DiBiase, Eric A. Schneider, Allen, Matkins, Leck, Gamble & Mallory, Marvin E. Garrett and George T. McDonnell for Third Party Claimants and Appellants.

Henry Phillip Starr for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## Opinion

## ARABIAN, J.—

### INTRODUCTION

Appellants John Bruins, Hetty Bruins, and James F. Bruins, and Ismael and Rosalinda Contreras (herein, the Bruins and the Contreras), appeal from a trial court order granting the application of respondent Commonwealth Land Title Company (Commonwealth) for a writ of execution and an order allowing it to sell certain dwellings, one owned by the Bruins and one owned by the Contreras. The separate appeals of the Bruins and the Contreras were consolidated for purpose of review by this court. We reverse and remand.

### STATEMENT OF FACTS

The original plaintiffs in this action, Thomas Pat Creech, Virginia Emeline Creech, and Doris V. Donovan (the plaintiffs) brought an action against O. John Kornbluth (Kornbluth), among others seeking damages for fraud,

trespass, intentional infliction of emotional distress, and to quiet title to certain real property. On October 30, 1975, the superior court entered a default judgment in favor of the plaintiffs for $86,000 in damages, plus costs and interest.

In January of 1976, plaintiffs recorded five abstracts of judgments based on the judgment. All of the abstracts named Kornbluth as one of the judgment debtors. The $86,000 in damages awarded by the judgment was divided among the five abstracts of judgment, i.e., the figures listed as the principal amount of the judgment on each of the five abstracts, when added together, totaled $86,000.[1]

According to appellants, at the time the abstracts were recorded, Kornbluth held title to a number of parcels of real property, including the following:

1. 1303 Fairlee Avenue, Duarte, California (the Bruins Property);

2. 702 Millbury, La Puente, California (the Contreras Property);

3. 1440 West 60th Street, Los Angeles, California (the 60th Street Property);

4. 5344 3rd Avenue, Los Angeles, California (the 3rd Avenue Property);

5. 12907 Sunburst Street, Arleta, California (the Sunburst Property);

6. 13040 Ratner Street, North Hollywood, California (the Ratner Property);

7. 1234 East 150th Street, Compton, California (the 150th Street Property).

After the default judgment was entered, Kornbluth appealed and plaintiffs' execution proceedings were delayed pending conclusion of the appeal. When the judgment was affirmed on appeal, and the plaintiffs began to take steps to execute on their judgment, they discovered that Kornbluth had transferred to others all of the real property he owned as of the date the judgment was entered.

Faced with this dilemma, plaintiffs began to execute on the parcels of property Kornbluth owned at the time the abstracts of judgment were

---

[1]The plaintiffs recorded five separate abstracts of judgment because the superior court awarded different amounts of damages to each of the various plaintiffs.

recorded. According to Commonwealth, the most valuable of the properties were levied upon first to keep the levies at a minimum. The Ratner property was sold at execution sale for $54,019.20. Plaintiffs then released from the judgment lien a second parcel of property (it is unclear from the record which particular parcel was released) in exchange for the then-owners' payment of a "small amount," which was equal to the balance owed Kornbluth on the contract purchase price. The trial court did not apply this undisclosed sum toward satisfaction of the judgment.

In June of 1980, plaintiffs executed a release of the Sunburst Property from the judgment lien in exchange for information from the then-owner of the property, Mrs. Lankin, regarding the whereabouts of Kornbluth and the location of certain valuable assets which belonged to him. Plaintiffs, however, were unable to levy on any of these assets. The trial court, as was the case with the previous parcel of property plaintiffs released from the judgment lien, did not credit the judgment against Kornbluth with the value of this property.

On June 11, 1980, all of the plaintiffs assigned their respective rights, titles and interests in the judgment to Commonwealth. These assignments were recorded on December 24, 1980.

On May 3, 1983, Commonwealth filed the instant application for a writ of execution and for permission to sell the Contreras Property and the Bruins Property (the application). The Bruins and the Contreras were not the original purchasers of the properties from Kornbluth. Rather, the properties were transferred by the original purchasers to others, but are currently owned by the Bruins and the Contreras. The Contreras Property and the Bruins Property are each separately encumbered by only one deed of trust. The trial court granted Commonwealth's application, and, on April 20, 1984, ordered the writ of execution to issue. The Contreras Property was to be sold first and if the sale of that property was insufficient to pay the amount owing to Commonwealth under the judgment, then the Bruins Property was to be sold as well.

The Bruins' and the Contreras' separate appeals from the judgment were consolidated in view of the common questions of law and facts they presented.

## CONTENTIONS

1. Appellants contend the trial court did not determine the proper order for marshaling the assets because it did not require that certain other properties previously owned by Kornbluth be sold prior to the sale of the Con-

treras Property and the Bruin Property. Additionally, Contreras contends the trial court erred in failing to direct that the properties be executed upon in the inverse order of alienation from Kornbluth, the judgment debtor.

2. Appellants contend the trial court erred in failing to credit against the outstanding balance of the judgment the full value of the properties which were released from the judgment lien.

3. Appellants contend that the abstracts of judgment in favor of plaintiff Doris V. Donovan, in the principal amounts of $1,500 and $23,500, respectively, are invalid because the abstracts misstate the amount of the judgment.

4. Appellants contend that the abstract of judgment in favor of Virginia Emeline Creech, in the principal amount of $35,000, is void because the date of the judgment was not entered thereon.

### Discussion

### I. *Commonwealth must satisfy its judgment by executing against the properties in reverse order of alienation.*

We first address appellants' contention that the trial court improperly determined the order in which assets should be marshaled because it failed to direct that certain properties previously owned by Kornbluth be executed upon prior to the Contreras Property and the Bruins Property.

■ "Marshaling is an equitable principle, in accordance with which assets and securities of a debtor are resorted to or apportioned in such a manner as to secure protection to the rights of each of two or more creditors, or of a creditor and some other person other than a creditor having an interest in such assets and securities." (53 Am.Jur.2d, Marshaling Assets, § 1, p. 4.)

■ Civil Code section 2899 provides:

"Where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

"1. To the things upon which he has an exclusive lien;

"2. To the things which are subject to the fewest subordinate liens;

"3. In like manner inversely to the number of subordinate liens upon the same thing; and,

"4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had—

"(1) To the things which have not been transferred since the prior lien was created;

"(2) To the things which have been so transferred without a valuable consideration; and,

"(3) To the things which have been so transferred for a valuable consideration in the inverse order of the transfer."

■ Here, there is a factual dispute regarding the number of properties which were owned by Kornbluth at the time the abstracts were recorded. Appellants contend that, pursuant to section 2899, the 3rd Avenue Property, which was owned by Kornbluth at the time the abstracts were recorded and which has no liens subordinate to the abstracts, must be executed upon first. Commonwealth, however, asserts that this property was never owned by Kornbluth, the judgment debtor, but, rather, was owned by a relative of Kornbluth with the identical surname.

This factual dispute may only be resolved by the trial court upon remand. If the trial court finds that this property was indeed owned by the judgment debtor at the time the abstracts were recorded, it must order that this unencumbered property be sold prior to any sale of the presently encumbered properties which were previously owned by Kornbluth, provided this can be done without risk of loss to Commonwealth. (See Civ. Code, § 2899, subd. 2.)

There is also a factual dispute regarding two other properties previously owned by Kornbluth, the 150th Street Property and the 60th Street Property. Contreras contends there are no liens subordinate to the abstracts of judgment on either of these two properties, whereas the Bruins maintain that each of the properties are encumbered by one lien subordinate to the abstracts of judgment. Therefore, upon remand, the trial court must determine whether these properties are, in fact, encumbered by respective liens. If the trial court finds these properties are not so encumbered, then they must be sold prior to other properties encumbered by only one lien, provided, again, that this can be done without risk of loss to Commonwealth. (*Ibid.*) If,

however, the trial court determines that each of these properties is encumbered by a lien subordinate to the judgment lien of Commonwealth, they must be executed upon in the order specified in section 2899, subdivision 4.[2] The order of execution will be addressed in the following discussion pertaining to the order in which the Contreras Property and the Bruins Property should be sold.

■ It is undisputed among the parties that the Contreras Property and the Bruins Property are currently both subject to one encumbrance junior to Commonwealth's judgment lien. Since Kornbluth transferred to third parties all of the real property he owned at the time the abstracts of judgment were recorded, if the transfers of both of these parcels (and any other parcels the trial court determines are encumbered by one lien) were made for valuable consideration, section 2899, subdivision 4, requires that "resort . . . be had . . . (3) [t]o the things which have been so transferred for a valuable consideration in the *inverse order of the transfer.*" (Civ. Code, § 2899, subd. 4(3), italics added.)

There is a dispute among the appellants as to which "transfer" the Civil Code refers. The Contreras contend that the relevant "transfer" is the one from the judgment debtor. The Bruins, on the other hand, in support of the trial court's ruling, contend the "transfer" to which section 2899 refers is the most recent sale of the property, not the original conveyance by the debtor. Since the Bruins took title on October 5, 1978, whereas the Contreras took title on November 8, 1981, the Bruins maintain that the rule of the inverse order of alienation dictates that the Contreras Property be sold before the Bruins Property.

A review of the historical underpinning of the rule or doctrine of "inverse order of alienation," which is a branch of the "marshaling of assets" doctrine[3] and is typically applied where a debtor conveys a separate parcel

---

[2]Two of the remaining parcels previously owned by Kornbluth, the Sunburst Property and the "other" property were released from the judgment lien. We will deal with these two properties later in this opinion when we determine whether the judgment should be reduced by the value of these properties. The Ratner Property, which was also previously owned by Kornbluth, was sold at execution sale and credited against the amount owed by the debtor on the judgment lien.

[3]The equitable doctrine of "marshaling assets" is generally called the "two-funds" rule or doctrine which is as follows:

"Where two or more creditors seek satisfaction out of the assets of their debtor, and one of them can resort to two funds whereas another creditor has recourse to only one of the funds . . . the former may be required to seek satisfaction out of the fund which the latter creditor cannot touch, so that by this means of distribution both creditors may be paid, or the single-fund creditor may, if possible, have his claim satisfied out of the fund which is subject to the claims of both creditors." (53 Am.Jur.2d, Marshaling Assets, § 1, pp. 5, 6.) The doctrine has been extended to cases where one has acquired the debtor's interest in property subject to a mortgage or other lien. "Protection of a purchaser under the equitable doctrine of marshaling usually involves a purchaser of land and the doctrine of inverse order of alienation." (*Id.*, at § 35, p. 30.)

of land subject to a mortgage or a judgment, shows that the transfer to which section 2899 refers is the *transfer by the debtor*.

The traditional rule or doctrine of inverse order of alienation provides that where a portion of lands subject to a lien has been alienated, the grantees may insist that the land retained by the grantor or original owner be sold first to satisfy the lien (*Irvine* v. *Perry* (1897) 119 Cal. 352, 355, 356 [51 P. 544]; *Summerville* v. *March* (1904) 142 Cal. 554, 557 [76 P. 388]; *Blood* v. *Munn* (1909) 155 Cal. 228, 234 [100 P. 694]) and that where the original owner has alienated *all* of the land subject to the lien in separate parcels successively, the parcels alienated or encumbered be sold in the reverse order of alienation (*Woodward* v. *Brown* (1897) 119 Cal. 283, 295-296 [51 P. 542]; *Fullerton Savings Bank* v. *Des Granges* (1919) 44 Cal.App. 611, 616 [186 P. 1052]).

The same rule has been applied when a judgment lien was involved. In *National Savings Bank* v. *Creswell* (1880) 100 U.S. 630, 636 [25 L.Ed. 713], the United States Supreme Court held that where a debtor owns several parcels of land encumbered by a judgment against him, and successively alienates all or some of these parcels, the parcel last alienated must, after the parcels retained are exhausted, be first sold to satisfy the judgment lien; provided, however, that the subsequent purchaser or encumberancer had notice of prior conveyances or encumbrances.[4]

The reason for this rule is that if the last parcel had been retained by the grantor, it would have been liable first to satisfy the judgment lien. (*Id.*, at p. 637.) The purchaser of the parcel last alienated, who had notice of the prior alienation of other parcels encumbered by the judgment liens, "sits in the seat" of the common grantor, and has precisely the same rights and incurs the same obligations as the common grantor. Therefore, that purchaser's property must be sold first in order to satisfy the judgment lien. (*Ibid.*)

The foregoing authorities, although of an aged vintage, are applicable modernly. These authorities require that the rights of the Bruins, the Contreras, as well as the present owners of any other properties covered by the judgment lien, and which have only one subordinate encumbrance, be determined according to the time their respective properties were alienated by the judgment debtor, Kornbluth, and not according to the time the properties were granted to them, as the Bruins would have us hold.

---

[4] "[T]he doctrine of sale in inverse order of alienation presupposes that the subsequent grantee or encumbrancer of the parcel covered by the paramount encumbrance had notice, actual or constructive, of the prior conveyance or encumbrance of another parcel . . . ." (53 Am.Jur.2d. Marshaling Assets, § 49, pp. 42-43.)

Here, the record does not indicate when the various properties encumbered by a lien subordinate to the abstracts of judgment were purchased from Kornbluth.

Therefore, we must reverse the ruling of the trial court which ordered the sale of the Bruins Property and the Contreras Property. Upon remand, the trial court should determine the dates when Kornbluth transferred each of his properties to the original grantees, and whether subsequent purchasers from these original grantees had notice of prior conveyances by Kornbluth which were subject to the abstracts of judgment. After the trial court makes these factual determinations, it should order the properties be sold in the following order to satisfy the judgment lien, if this can be done without risk of injustice to Commonwealth: the property last alienated by Kornbluth should be sold first (provided that the property was acquired with notice of the previous conveyances from Kornbluth); next the property alienated just before that should be sold, and so on, until the judgment lien has been satisfied in full.

## II. *Credit must be given against the judgment for properties released from the judgment lien.*

■ Appellants contend the trial court erred in failing to allow credit against the judgment for the full value of the properties which were released from the judgment lien.

The case of *Blood* v. *Munn, supra,* 155 Cal. 228, at page 234, sets forth the general rules applicable when the holder of a paramount encumbrance, such as a mortgagee or other lienholder, releases part of a property from its lien. The *Blood* court held that if one holding a prior or paramount lien covering the property (1) with knowledge of a prior conveyance by the debtor[5] releases (2) the property which is primarily chargeable with the debt, (3) without consent of those interested in property which is only secondarily liable, the latter may insist that the value of the property so released be credited on the debt secured by the prior or paramount lien. The reason for the rule requiring such credit be given was stated in *Blood* as follows: "[I]f the person interested in the property secondarily liable could not claim such credit when the primary property is released without his consent, he would, in such a case, be deprived of all benefit of the rule entitling him to have the primary property first exhausted." (*Ibid.*)

[5]The notice required is actual notice or notice presumed from circumstances and not constructive notice arising from recordation. (*Woodward* v. *Brown, supra,* 119 Cal. at p. 296.)

In the present case, Commonwealth, the judgment creditor, had *actual knowledge* that Kornbluth, the judgment debtor, had conveyed all of his real property to third parties. In Commonwealth's papers supporting its application for the writ of execution, Commonwealth stated:

"When the judgment was finally affirmed on appeal, the plaintiffs ran a title search and discovered that while the appeal was pending, defendant Kornbluth had sold every single one of the properties which had been standing in his name, and had fled the country."

Commonwealth *did not seek the consent* of any of the other owners of property encumbered by the judgment lien when it released the Sunburst Property from the lien in exchange for information from the then-owner of the property, Mrs. Lankin. Further, Commonwealth did not seek the consent required under the holding of *Blood* when it released yet another of the properties; that property was released in exchange for payment of a "small amount," a sum equal to the balance due from the then-owners to Kornbluth on the purchase contract.

Finally, the *Blood* case requires a credit in situations where a paramount encumbrancer releases property *"primarily chargeable"* with the burden. We have previously determined that where the debtor has alienated all of the property he owns, the parcel last alienated by the debtor is the property which must be first subjected to the satisfaction of the judgment lien, i.e.: the property last alienated will be "primarily chargeable" with the burden. Here, we do not know whether or not the Sunburst Property and/or the "other property" (the "released properties") were alienated by Kornbluth before or after he alienated the Contreras Property, the Bruins Property or any other properties also encumbered by a lien subordinate to the judgment lien. Therefore, upon remand, the trial court should ascertain the dates the properties were alienated from Kornbluth. If the trial court finds that Kornbluth sold the "released properties" after he sold the properties he still owned at the time the abstracts of judgment were recorded, the value of the released properties must be credited against the amount owing on the judgment lien.

### III. *The abstracts of judgment in favor of Doris Donovan are valid.*

Appellants next contend the two abstracts of judgment in favor of plaintiff Doris V. Donovan, which listed the amounts of principal as $1,500 and $23,000, respectively, are invalid because the abstracts thereby misstate the amount of the judgment. We disagree.

The facts show that on October 30, 1975, the trial court entered a default judgment which stated, in pertinent part:

"1. That plaintiff, Doris V. Donovan recover judgment:

"a. Against Defendants, O. JOHN KORNBLUTH, LEE ESTES, and L.A. WHOLESALE HOMES, INC., for fraud, in the sum of $1,500.00;

"b. Against Defendants, O. JOHN KORNBLUTH, SHEILA FASONE, JODY FASONE, and L.A. WHOLESALE HOMES, INC., for emotional distress, in the sum of $8,500.00;

"c. Against defendants, O. JOHN KORNBLUTH, SHEILA FASONE, JODY FASONE, and L.A. WHOLESALE HOMES, INC., punitive damages in the sum of $15,000.00."

On January 13, 1976, Doris V. Donovan, as judgment creditor, recorded two separate abstracts of judgment. In accordance with Paragraph 1.a. of the default judgment entered by the court, the first abstract of judgment in favor of Donovan named O. John Kornbluth, Lee Estes and L.A. Wholesale Homes, Inc. as judgment debtors, and showed a total principal amount of $1,500 was owed Donovan pursuant to the judgment. In accordance with Paragraphs 1.b. and 1.c. of the default judgment, the second abstract of judgment in favor of Donovan named O. John Kornbluth, Sheila Fasone, Jody Fasone, and L.A. Wholesale Homes, Inc. as judgment debtors and showed a total principal amount of $23,500 (the sum of the $8,500 and $15,000 owing from defendants to plaintiff) was owed Donovan pursuant to the judgment.

The facts, therefore, show that there was no error and that, contrary to appellants' assertion, the amounts stated in these abstracts of judgment correspond to the amounts the listed defendants owed Donovan under the judgment.

### IV. *The abstract of judgment in favor of Virginia Creech is not void.*

■ Appellants' final contention is that the abstract of judgment in favor of Virginia Emeline Creech, reflecting the amount of principal as $35,000, is void because the abstract erroneously fails to state a date on which the judgment was entered. The contention lacks merit. Appellants, by a very technical argument, are simply seeking to escape the effects of a judgment lien on the properties which they purchased with knowledge of the lien. However, contrary to their contention, the abstract is not void.

The trial court has inherent power to correct *clerical errors* in its records, whether made by the clerk, counsel or the court itself, "so that such records will conform to and speak the truth." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 68, pp. 502-503; Code Civ. Proc., § 473.) A clerical error, as opposed to a noncorrectable judicial error, is one that is made inadvertently. (7 Witkin, Cal. Procedure, *supra,* Judgment, § 67, pp. 500-501.) Moreover, clerical errors are correctable at any time. (*In re Marriage of Kaufman* (1980) 101 Cal.App.3d 147, 151 [161 Cal.Rptr. 538]; *Estate of Goldberg* (1938) 10 Cal.2d 709, 716, 717 [76 P.2d 508].)

Here, the date of entry of judgment was omitted from only one of the five abstracts of judgment which all were recorded on the same date the judgment was entered. Since this error was obviously an inadvertent clerical error, it can be corrected by the trial court.[6]

■ When clerical errors in the judgment or order are corrected by the court under its inherent power, the order of correction may, if necessary, be made nunc pro tunc as of the time of the original entry, and this is true regardless of lapse of time. (*LeMar* v. *Superior Court* (1948) 87 Cal.App.2d 126, 129 [196 P.2d 98]; *Wilson* v. *Wilson* (1948) 88 Cal.App.2d 382, 384 [198 P.2d 916].) Further, an appellate court may direct the trial court to make an order *nunc pro tunc.* (*Larsen* v. *Barnett* (1950) 101 Cal.App.2d 282, 290 [225 P.2d 297].) Accordingly, we direct the trial court to correct the abstract of judgment in favor of Virginia Emeline Creech to show the judgment was entered on October 30, 1975.

### DISPOSITION

Reversed and remanded to the trial court for further proceedings consistent with the views expressed in this opinion. The parties are to bear their own costs on appeal.

Klein, P. J., and Danielson, J., concurred.

---

[6]In a supplemental letter brief, Contreras cites *Keele* v. *Reich* (1985) 169 Cal.App.3d 1129 [215 Cal.Rptr. 756], which involved a situation where the debtor's social security number was marked "*unknown*" on the abstract of judgment even though the judgment creditor had knowledge of the number. The court held that under these circumstances, the omission nullified the abstract. In the present case, unlike the judgment creditor in *Keele,* Commonwealth did not purposefully withhold information required on the abstract; the omission was obviously an inadvertent clerical error. Therefore, contrary to the Contreras' assertion, the *Keele* case does not render void the abstract of judgment in favor of Virginia Emeline Creech.