**In re Y.D. MADDOX, Jr., d/b/a Jefferson Meat Processing, Debtor.**

**Bankruptcy No. 80–00041G.**

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

Dec. 15, 1987.

Harmon T. Smith, Gainesville, Ga., for debtor.

Stephen Block, Levine & D'Alessio, Atlanta, Ga., for Maddox (objecting creditor).

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

This matter is before the court on remand from the United States District Court for a determination of the fairness, equitability, and lack of discrimination of debtor's proposed plan of reorganization.

## FINDINGS OF FACT

On March 28, 1980, the debtor, Y.D. Maddox, Jr., doing business as Jefferson Meat Processing, filed a Chapter 11 petition. Debtor filed a proposed plan of reorganization on November 17, 1980, which made no provision for any claims of debtor's former wife, Carolyn P. Maddox. An amended plan was filed on December 11, 1980, in which the claim of Ms. Maddox was separately classified (Class IX). The plan sought to discharge the claim of Ms. Maddox which arose out of the December 6, 1979 final judgment and divorce decree between Y.D. Maddox and Carolyn P. Maddox in the Jackson County, Georgia Superior Court. That divorce decree provided as follows:

Defendant shall retain all property in his name and pay all indebtedness including, but not restricted to, Loan No. 0–3606852–1 in favor of the Federal Land Bank of Columbia, South Carolina, presently with an unpaid principal and accumulated interest, advances, etc. of $166,906.43, recorded in Deed Book 7–E, Pages 254, 257, and any expenses con-

nected with notice of foreclosure which was given by said obligee in a letter dated November 6, 1979 addressed to plaintiff amd [sic] a letter of even date addressed to defendant, both of said letters being from Benjamin B. Boyd, Sr., attorney for obligee, and defendant shall prevent the same from being foreclosed and he shall save plaintiff harmless of all liability on said loan and from any loss occasioned by any non-payment of said loan and the costs as described in said letter, including but not restricted to attorney's fees provided in the note secured by said security deed in favor of the Federal Land Bank of Columbia, South Carolina.

Defendant shall pay all other indebtedness on real property owned by the parties jointly or by defendant on or before all due dates.

This judgment does not change the title to any real property as it existed prior to the date of this judgment.

At the time of the divorce decree Mr. and Ms. Maddox were cosigners on an indebtedness to the Federal Land Bank as elaborated in the final judgment. This loan was secured by several tracts of property, one of which was jointly owned by the parties and consisted of approximately 178.6 acres. The remaining property securing the debt was owned by Mr. Maddox.

A portion of the jointly owned property, 95.88 acres, was sold for $121,241.00 pursuant to bankruptcy court approval. The proceeds of this sale were applied toward payment of the debt to the Federal Land Bank, taxes, and costs of disposition of the property. Furthermore, $10,743.62 of the sales proceeds of this jointly owned property was reserved for payment of debtor's attor-

neys' fees. (See Carolyn P. Maddox's Response to 'Trustee's Brief on Remand for Determination of Plan's Fairness, Equitability and Lack of Discrimination', page four, filed August 10, 1987; Trustee's Brief on Remand for Determination of Plan's Fairness, Equitability and Lack of Discrimination, page seven, filed August 4, 1987).[1]

The remaining 82 acres of the jointly owned property were sold for $24,600 pursuant to bankruptcy court approval.[2] The court authorized disbursal of the sale proceeds to the Federal Land Bank, taxing authorities, and auctioneers. The jointly owned property thus produced total gross sale proceeds of $145,841.00.

On March 24, 1981, Ms. Maddox and other creditors filed objections to confirmation of debtor's plan. On June 8, 1981, debtor filed a "Third Amendment to Plan of Reorganization" (actually this was only the second amendment) which provided for Ms. Maddox's claim as follows:

After all existing encumbrances are paid from the proceeds derived from the sale of the property jointly held by Carolyn P. Maddox and the Debtor, Carolyn P. Maddox shall be entitled to one-half of the equity realized from future sales of said property, or be entitled to a deed for one-half of the remainder of the said unsold property after all encumbrances are satisfied. In the event no equity is realized after the payment of all encumbrances or upon receipt of a deed conveying one-half of the remainder of the unsold jointly owned property, whichever occurs, the claim of Carolyn P. Maddox ... shall terminate and no longer be enforceable against the Debtor.

1. Bankruptcy Judge William L. Norton, Jr.'s order of May 12, 1981 awarded attorneys' fees and provided a reserve for that purpose and references his order of April 10, 1981 authorizing disbursements. Said order of April 10, 1981 is not in the court file or on the court docket of the main bankruptcy case. Such order presumably would have been entered in Adversary No. 80–0039G, a complaint instituted by debtor to sell real estate free of liens; however, the order is not in that file. The docket in that adversary proceeding, however, does indicate that an order was filed April 14, 1981 authorizing dis-

bursements. Debtor's counsel furnished the court with a signed copy of what purports to be the April 10, 1981 order authorizing disbursements.

2. On January 17, 1984 the bankruptcy court ordered the appointment of a trustee in this Chapter 11 case. The trustee arranged this second sale of debtor's property and has worked with debtor toward implementation of a plan of reorganization.

Bankruptcy Judge William L. Norton, Jr., by separate order and judgment entered June 19, 1981, determined that Ms. Maddox's claim against the debtor was in the nature of a property settlement, was dischargeable in bankruptcy, and denied Ms. Maddox's objection to debtor's plan. On June 26, 1981, Ms. Maddox appealed this order to the District Court.

Notwithstanding the pendency of this appeal, on November 9, 1981, Judge Norton entered an order confirming debtor's plan of reorganization, as amended. Further, on November 16, 1981, Judge Norton issued a third order disallowing Ms. Maddox's claim on the grounds that "the Court had previously ruled against said creditor having any claim over and above one-half of the equity in the jointly owned real estate." On December 9, 1981, Ms. Maddox appealed the order of confirmation as it related to her interest.

By order of March 24, 1982, United States District Judge William C. O'Kelley reversed the June 19, 1981 order and remanded the case to the bankruptcy court for further findings regarding the dischargeability of Ms. Maddox's claim against the debtor. That court noted that consideration of other issues including the fairness of the plan to Ms. Maddox and the awarding of attorneys' fees to counsel for debtor from the proceeds of the jointly owned property was premature at that time and would be postponed until later. Specifically the court wanted the bankruptcy court on remand to make findings of fact regarding whether Ms. Maddox's claim was nondischargeable alimony or a dischargeable property settlement. Following the remand Judge O'Kelley, by order of May 19, 1982, dismissed Ms. Maddox's appeal of the order of confirmation as premature.

Pursuant to Judge O'Kelley's remand order of March 24, 1982, Judge Norton entered a further order dated November 26, 1984 in which he found the claim of Ms. Maddox to be a property settlement and thus dischargeable in bankruptcy pursuant to 11 U.S.C. Section 523. Ms. Maddox appealed and on August 30, 1985 Judge

O'Kelley affirmed that portion of the order that found the hold harmless agreement and Ms. Maddox's interest in the jointly owned property to be a dischargeable property settlement. He reversed and remanded this action to the bankruptcy court for further consideration of the plan including the issues of the fairness, equitability, and lack of discrimination of the plan of reorganization to Ms. Maddox pursuant to 11 U.S.C. Section 1129. Judge O'Kelley enumerated several concerns in this regard, including why marshalling of assets was not used; whether Ms. Maddox would receive more in a Chapter 7 liquidation than she would under the plan; whether the plan discriminated against and was fair and equitable to Ms. Maddox pursuant to 11 U.S.C. Section 1129(b); whether the plan was proposed in good faith; why Ms. Maddox was placed in a separate class that was listed behind every other creditor; and whether debtor's attorneys should be paid from the sale proceeds of the jointly owned property.

## I.
### PRELIMINARY ISSUES

A. Lack of Finality of the Confirmation Order

■ Ms. Maddox's appeal of the order and judgment dated June 19, 1981 involved the following issues:

the dischargeability of the claim;

the fairness of the plan to Ms. Maddox if that claim were dischargeable;

the authority of the bankruptcy court to award fees to debtor's attorneys from the sale of the jointly owned property; and

the dischargeability of the attorney's fees awarded in the Maddox divorce decree.

These issues on appeal were inextricably intertwined with the issues that the bankruptcy court necessarily had to consider in its orders of November 9, 1981 and November 16, 1981 confirming the amended plan and disallowing Ms. Maddox's claim respectively. The bankruptcy court entered these two orders notwithstanding the pendency of Ms. Maddox's appeal. The finality of such orders must be viewed in the context

of the appeal. While the Chapter 11 was not stayed pending the appeal, it appears that as to the issues relating to the claim of Ms. Maddox, the bankruptcy court was divested of jurisdiction of these issues until the appeal was resolved.

In *Harsh Investment Corp. v. Bialac (In re Bialac)*, 15 B.R. 901 (Bankr. 9th Cir. 1981) the court recognized:

> It is a well established rule that a properly filed notice of appeal immediately acts to transfer jurisdiction from the trial court to the court of appeals with regard to any matters involved in the appeal, and divests the lower court of jurisdiction to proceed further with such matters.

*In re Bialac*, 15 B.R. at 903; *See also Tesoro Savings & Loan Association v. Fargo Financial, Inc. (In re Fargo Financial, Inc.)*, 71 B.R. 702, 703–04 (Bankr.N.D. Ga.1987); *Ingersoll–Rand Financial Corp v. Kendrick Equipment Corp. (In re Kendrick Equipment Corp.)*, 60 B.R. 356, 358 (Bankr.W.D.Va.1986). Because Ms. Maddox's appeal of the June 19, 1981 order involved issues regarding her claim, treatment under the plan and objections to confirmation of the plan, the subsequent bankruptcy court orders were subject to her rights on appeal.

Although debtor contended that Ms. Maddox's appeal of the confirmation order was not timely, Judge O'Kelley, by order of May 19, 1982, considered the matter and held the appeal to be premature. Further, Judge O'Kelley's subsequent order dated August 30, 1985 remanded the case to this court for consideration of the plan, including its fairness, equitability, and lack of discrimination as to Ms. Maddox.

Even if the confirmation order was not timely appealed, Judge O'Kelley accepted the appeal, remanded the case to the bankruptcy court and his orders were not appealed. The remand orders are now final and constitute the law of the case. As noted by the Eleventh Circuit,

> [T]he "law of the case" doctrine "invokes the rule that findings of fact and conclu-

sions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." The doctrine "generally operates to preclude a reexamination of issues decided upon appeal ..."

*Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir.1984) (citations omitted). Accordingly, the court concludes that consideration of confirmation of the plan, including issues of the fairness, equitability, and lack of discrimination of the plan is properly before it for decision. Debtor's contention that the order of confirmation is final is without merit.

**B. Determination of Ms. Maddox's Claim**

Ms. Maddox's claim was determined by Judge Norton to be dischargeable. This finding ultimately was affirmed on appeal by Judge O'Kelley and is final. The amount of the claim has not, however, been finally determined. In considering confirmation of debtor's plan on remand, the court must still consider and address the issue of the amount of Ms. Maddox's claim.

Judge Norton's June 19, 1981 order and judgment examined Ms. Maddox's claim and concluded that the language of the divorce decree was only intended to hold Ms. Maddox harmless from defending a deficiency claim against the jointly owned property. The court found Ms. Maddox was entitled to one-half of the value of the equity in the jointly owned property but that the joint property had no equity at that time.[3] The judgment went on to provide:

> [T]he motion of Mrs. Carolyn P. Maddox to establish her claim for one-half (½) of the value of the property she jointly owns with the debtor free of liens, as alimony, and thus, non-dischargeable, is hereby denied.

In a further order dated November 16, 1981, Judge Norton again denied Ms. Maddox's claim on the basis that the court previously ruled in the June 19, 1981 order

---

3. Debtor now acknowledges, notwithstanding Judge Norton's conclusion to the contrary, that the jointly owned property had equity sufficient to pay Ms. Maddox $9,385.42.

against Ms. Maddox having any claim in excess of one-half of the equity in the jointly owned property. Judge O'Kelley on appeal [order of March 24, 1982] found, however, that the bankruptcy court's determination of Ms. Maddox' claim was in error and observed as follows:

[T]he bankruptcy judge erred by concluding that the "pay and save harmless" provision was solely to protect Mrs. Maddox from a deficiency judgment. A literal reading of the entire provision dealing with the joint loan indicates that the decree imposed the obligation on Mr. Maddox to pay off the Federal Land Bank note. The plain language of the provision states that Mr. Maddox is to "pay all indebtedness," including the Federal Land Bank loan. There is nothing to support the bankruptcy court's conclusion that the provision was intended only to protect Mrs. Maddox from a deficiency judgment ... The bankruptcy court essentially wrote out of the judgment the word "pay," focusing instead on the latter phrases of the provision. The requirement that Mr. Maddox "pay" the debt clearly imposes the debt upon him alone.

This court is bound by and fully concurs with Judge O'Kelley's interpreting of the Maddox divorce decree. It is clear, therefore, that the amount of Ms. Maddox's claim has not been finally determined.

The language of the divorce decree does not limit Mr. Maddox's obligations to holding Ms. Maddox harmless or preventing a deficiency judgment against her. The divorce decree evidences an intent to protect and preserve her interest in the jointly owned property. Accordingly, this court finds that the amount of Ms. Maddox's claim against debtor, arising from the divorce decree, is for one-half (½) of the *actual* value of the property owned jointly by Y.D. Maddox and Carolyn P. Maddox. Since the jointly owned property was sold, pursuant to court authorization, for $145,841.00, Ms. Maddox's one-half undivided interest in the proceeds of the joint property is $72,920.50.

■ Under 11 U.S.C. Section 363(h) and (j) the bankruptcy court can order disposition of spousal property and in so doing can assess an aliquot share of the cost of the sale against the spouse's interest. As noted in this case the joint property was sold and $10,743.62 of the proceeds was reserved for payment of debtor's attorneys' fees. In the present case, however, the divorce decree specifically imposed payment of the entire debt on Mr. Maddox alone. He was to pay the debt and all related costs, including attorneys' fees, and to hold Mrs. Maddox harmless not only from liability but any loss. The proceeds from the sale of the property were applied toward payment of a portion of debtor's attorneys' fees and the balance to the joint debt. While Section 363(h) and (j) ordinarily permit an assessment of an aliquot share of costs in selling spousal property, they do not apply in the present circumstance. Here, there is a specific final decree of divorce which specifically mandates that, as between these parties, Mr. Maddox is to bear all costs as to the joint property, including attorneys' fees. Thus it was improper to assess Ms. Maddox with any portion of the attorneys' fees for the sale of this property.

Based on the foregoing reasoning, the court concludes that the treatment of Ms. Maddox's interests is unfair, inequitable and discriminatory.

## II.

### EXAMINATION OF THE PLAN

#### A. Marshalling of Assets

The court will now further address the issues of whether the debtor's amended plan is fair, equitable, and not unfairly discriminatory as to Ms. Maddox. As noted, Mr. and Ms. Maddox jointly owned improved real property consisting of approximately 178.6 acres. Mr. Maddox also owned other tracts of real property which were titled in his individual name. The Federal Land Bank note on which the Maddox's were cosigners was secured by the jointly owned property as well as the property owned solely by Mr. Maddox. As Judge O'Kelley concluded, the Maddox divorce decree required Mr. Maddox to "pay

all indebtedness" including the joint note. The divorce decree thus imposed that indebtedness and all costs upon Mr. Maddox alone. In implementing the plan, however, debtor sold the jointly owned property and applied the proceeds thereof, including a portion of Ms. Maddox's share, toward payment of his attorney fees and the Federal Land Bank note. This court can find no evidence that this debtor-in-possession, exercising the powers of a fiduciary trustee, ever considered or proposed marshalling of assets.[4]

Marshalling of assets is an equitable doctrine under which a debtor's assets are used and apportioned in such a manner as to provide protection to the rights of each of two or more creditors or of a creditor and someone else who has an interest in the assets. *See Commonwealth Land Title Co. v. Kornbluth*, 175 Cal.App. 3d 518, 220 Cal.Rptr. 774 (1985). Bankruptcy courts, as courts of equity, have the power to marshall a debtor's assets in appropriate situations to secure an equitable distribution of funds to creditors of the debtor. *See Meyer v. United States*, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); *Second National Bank v. Phillips*, 189 F.2d 115 (5th Cir.1951); *Merchants' & Mechanics' Bank v. Sewell*, 61 F.2d 814 (5th Cir.1932); *Peoples Bank v. The Computer Room, Inc. (In re The Computer Room, Inc.)*, 24 B.R. 732 (Bankr.N.D.Ala. 1982); *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437 (Bankr.N.D.Fla.1980); *Fundex Capital Corp. v. Balaber-Strauss (In re Tampa Chain Co.)*, 53 B.R. 772, 13 B.C.D. 792 (Bankr.S.D.N.Y.1985). *See also McDonald v. First National Bank (In re Harrold's Hatchery and Poultry Farms, Inc.)*, 17 B.R. 712 (Bankr.M.D.Ga.1982).

Although marshalling is typically applied when there are two creditors of the same debtor, authorities on the matter, make clear that the doctrine has application to other instances. Courts have applied this doctrine in situations similar to the one at bar involving a creditor and another party holding an interest in the property in question, here the Federal Land Bank and Ms. Maddox respectively. *See Bank of Bentonville v. Swift & Co.*, 233 Ark. 808, 348 S.W.2d 881 (1961) (applied marshalling on behalf of a purchaser from a debtor); *Blanchard v. Naquin*, 116 La. 806, 41 So. 99 (1906) (where creditor held a mortgage on two pieces of property owned by A and B, the entire debt was due from A, the court held the property of B could not be made to contribute to satisfaction of the mortgage debt unless proceeds from A's property were insufficient); *Commonwealth Land Title Co. v. Kornbluth*, *supra*, (persons other than a creditor may be protected by requiring marshalling; extended protection to a purchaser who acquired debtor's interest in property subject to encumbrances).[5]

**4.** American Jurisprudence states the doctrine of marshalling of assets as follows:

Where two or more creditors seek satisfaction out of the assets of their debtor, and one of them can resort to two funds whereas another creditor has recourse to only one of the funds ... the former may be required to seek satisfaction out of the fund which the latter creditor cannot touch, so that by this means of distribution both creditors may be paid, or the single-fund creditor may, if possible, have his claim satisfied out of the fund which is subject to the claims of both creditors. In some cases the doctrine is defined strictly in terms of lien or secured creditors. In other cases the doctrine is defined in terms of "interests" which are *not limited to secured creditors or even to creditors.*

53 Am.Jur.2d, *Marshaling Assets*, Section 1 (1970 & Supp.1987) (emphasis added). American Jurisprudence also provides in that same section:

Marshalling is an equitable principle, in accordance with which assets and securities of a debtor are resorted to or apportioned in such a manner as to secure protection to the rights of each of two or more creditors, *or of a creditor and some person other than a creditor having an interest in such assets and securities.*

53 Am.Jur.2d, *Marshaling Assets*, Section 1 (1970 & Supp.1987) (emphasis added).

**5.** American Jurisprudence also provides on the topic of marshalling:

If, as between joint debtors whose property is security for the debt in question, the entire debt is due from one of them, the other debtor, on a principle similar to that of marshaling, may demand that the property of the first be sold, if by such sale sufficient may be realized to satisfy the debt.

53 Am.Jur.2d, *Marshaling Assets*, Section 31 (1970 & Supp.1987). *See also Love v. Goodson,*

In the case at bar, Ms. Maddox clearly had an interest in the jointly-held property. Mr. Maddox, by the express terms of the divorce decree, was to pay the debt, as well as hold Ms. Maddox harmless and protect her interest therein. Two funds were available for the satisfaction of the Federal Land Bank note, namely the jointly owned property and the property owned solely by Mr. Maddox. The Federal Land Bank had the right to resort to either of these two funds for satisfaction of its mortgage. Based on the foregoing, this court concludes that equity mandates that marshalling should have been applied in the treatment of Ms. Maddox's claim. Under marshalling of assets, the property owned solely by Mr. Maddox should have been applied first toward payment of the debt to the bank before resort to the jointly owned property. To the extent that the plan does not provide for marshalling of assets and for the protection, preservation and realization of Ms. Maddox's interest in the jointly owned property, the court finds that the plan is unfair, inequitable and discriminatory as to Ms. Maddox's claim or interest. Accordingly, confirmation of the debtor's plan, as amended, must be denied.

Further, in the administration of this case and the formulation of a plan, this debtor appears to have continuously ignored or failed to protect and provide adequately for the rights of Ms. Maddox. He has given priority and preferential treatment to virtually all other classes of creditors' claims and interests to her detriment. As a result the assets in which she held an interest have been utilized and disbursed to her injury and to the benefit of debtor or his other creditors. Except for the Federal Land Bank, neither debtor nor his other creditors had any interest in or right to the one-half undivided interest of Ms. Maddox in the jointly owned property, or its proceeds.

The bankruptcy court is a court of equity. *Ranch House of Orange–Brevard, Inc. v. Gluckstern (In re Ranch House of Orange–Brevard, Inc.),* 773 F.2d 1166, 1169 (11th Cir.1985). As such this court cannot permit such treatment of a party's interests. Accordingly, the court impresses a trust on all of the remaining assets of the debtor's estate in favor of Ms. Maddox and she is granted a lien on said assets, subject only to any valid and outstanding liens, until such time as her claim is satisfied in full. Any liquidation of assets or plan of reorganization must give full recognition of and provide for the full protection and payment of Ms. Maddox's claims or interests without diminution. Furthermore, any estate funds on hand that were realized from the sale of Ms. Maddox's share of the jointly owned property shall be paid to her forthwith.

### B. Chapter 7 Liquidation

Debtor's plan proposes to pay Ms. Maddox $9,385.42 representing one-half the equity of the joint property while the court has found her claim to be for $72,920.50 representing one-half of the actual value of the joint property. Thus, Ms. Maddox is the holder of a separately classified and impaired claim which has not accepted the plan. For the plan to be confirmable, she must receive or retain under the plan property of a value that is not less than the amount she would receive in a Chapter 7 liquidation. *See* 11 U.S.C. Section 1129(a)(7).

The evidence reflects that debtor's financial position is as follows. Appraisals by Greene Real Estate Company, Inc., have established a total value of approximately $103,360.00 for debtor's interest in the remaining real estate [6]; debtor's amended schedules filed July 3, 1986 indicate a value of $33,279.36 for personal property; and the trustee has approximately $45,000 in estate funds, thereby yielding total estate

---

150 Ga. 46, 47, 102 S.E. 429 (1920); *Newsom v. McLendon,* 6 Ga. 392, 399–401 (1848).

**6.** Debtor owns a one-third interest in the Jefferson Square property which has been appraised at $153,000 ($51,000); a one-third interest in the cemetery property which has been appraised at

between $18,000–$22,000 ($6000); and a whole interest in the abattoir property which has been appraised at $46,360. In contrast to these appraisals, debtor's amended schedules filed July 3, 1986 value debtor's remaining real estate holdings at $43,000.

assets of approximately $181,639.36. Debtor claims $10,900.00 in exemptions. Further, debtor's amended schedule lists secured claims of $8816.54 and unsecured claims of $47,356.53. Even if these claims were paid and exemptions allowed first, approximately $114,566.29 would be available in a Chapter 7 liquidation for distribution in payment of Ms. Maddox's claim and for payment of costs and expenses of the Chapter 11 or further liquidation of assets. Debtor's plan as amended proposes to pay Ms. Maddox $9385.42, whereas Ms. Maddox's claim has been valued by this court at $72,920.50. Obviously, Ms. Maddox would receive substantially less pursuant to debtor's proposed plan as amended than she would receive in a Chapter 7 liquidation. Accordingly, the plan does not meet the test of Section 1129(a)(7) and, as such, is discriminatory and inequitable in its treatment of Ms. Maddox's claim.

### C. Absolute Priority Rule

As noted, debtor's plan proposes to pay Ms. Maddox one-half the equity in the joint property in the sum of $9385.42, not one-half of the actual value of $72,920.50 as determined by the court. Since Ms. Maddox's claim is impaired and she has not accepted the plan, under 11 U.S.C. Section 1129(a)(8), one of the requirements for a plan to be confirmable, is not satisfied.

■ Nevertheless, where a plan of reorganization meets all applicable requirements of Section 1129(a) except subparagraph (a)(8), the plan, on request of the proponent, can be confirmed over the objections of a non-accepting impaired class if the "cramdown" provisions of 11 U.S.C. Section 1129(b) are met. Under, Section 1129(b)(2)(B), a plan is deemed to be fair and equitable if one of two requirements is met. First, the holder of a claim of such non-accepting impaired class (Ms. Maddox) must receive or retain pursuant to such claim property of a value equal to the allowed amount of such claim. Section 1129(b)(2)(B)(i). The court has previously determined that Ms. Maddox has a $72,-920.50 claim; however, the plan only proposes to pay her one-half of the equity in

the property in the sum of $9385.42. Obviously this plan does not meet this requirement. Second, no holder of a claim or interest junior to the claims of such class can receive or retain an interest in the debtor's property unless the claimants in such class are paid 100% of their claims. Section 1129(b)(2)(B)(ii). Under the debtor's plan, Ms. Maddox's claim is paid on a small portion of the amount due while Mr. Maddox retains an interest in certain assets and any residue of assets. As a result, this plan also fails to comply. Because the amended plan impairs the claim of Ms. Maddox, has not been accepted by her, and does not meet either of the "cramdown" requirements of Section 1129(b)(2)(B) of the Bankruptcy Code, the court concludes the amended plan is not fair and equitable and is not confirmable.

### CONCLUSION

In summary, the court concludes that debtor's plan as amended is unfair, inequitable, and discriminatory in its treatment of Ms. Maddox's claim or interest. The divorce decree required Mr. Maddox to pay the Federal Land Bank note, and to hold her harmless from all liabilities, costs, loss or attorneys' fees in connection with her interest in the jointly owned property. Debtor's plan fails to make adequate provision for the marshalling of assets or otherwise for the protection and preservation of Ms. Maddox's claim or interest. Instead, the plan effectively deprives Ms. Maddox of her claim or interest in the jointly owned property by applying, in a discriminatory manner, a portion of Ms. Maddox's share of the sale proceeds of the joint property toward satisfaction of the obligations of Mr. Maddox. Furthermore, a portion of the attorneys' fees from the sale of this property were improperly assessed to Ms. Maddox despite the divorce decree which specifically imposed payment on Mr. Maddox alone. Such treatment of Ms. Maddox is grossly unfair, inequitable, and discriminatory.

Ms. Maddox's claim or interest is separately classified and impaired, and she has not accepted the plan. In the absence of

such acceptance for the plan to be confirmable under the "cramdown" provisions of Section 1129 at least one of the "cramdown" provisions must be met. For the reasons discussed hereinbefore, debtor's plan does not meet either of the cramdown requirements. Accordingly, the plan violates the absolute or strict priority rule and cannot be confirmed under Section 1129. Finally, the plan is not confirmable because Ms. Maddox would receive substantially less under debtor's plan than she would receive in a Chapter 7 liquidation. For all of these reasons the court finds that the plan as amended is unfair, inequitable, and discriminatory as to Ms. Maddox's claim or interest. Accordingly, it is

ORDERED that Carolyn P. Maddox's claim against the debtor, Y.D. Maddox, Jr., doing business as Jefferson Meat Processing, is established and ALLOWED in the amount of $72,920.50, and it is

FURTHER ORDERED that confirmation of the debtor's plan, as amended, is DENIED because the plan is unfair, inequitable, and discriminatory in its treatment of the claim or interest of Carolyn P. Maddox and the plan does not meet the requirements of 11 U.S.C. Section 1129, and it is

FURTHER ORDERED that a trust is impressed on all of the remaining assets of the debtor's estate in favor of Ms. Maddox and she is granted a lien on said assets, subject only to any valid and outstanding liens on any specific asset or quantity of assets, until such time as her allowed claim of $72,920.50 has been satisfied in full. The court orders that any further liquidation of assets or plan of reorganization must give full recognition of and provide for the full protection and payment of Ms. Maddox's claim or interest without diminishment. The court also orders that any funds on hand that were realized from the sale of Ms. Maddox's share of the jointly owned property be disbursed to her forthwith.

IT IS SO ORDERED.