[No. A047117. First Dist., Div. Five. Sept. 27, 1990.]

In re the Marriage of DANIELLE JO and JOEL S. ORCHARD.
DANIELLE JO ORCHARD, Respondent, v.
JOEL S. ORCHARD, Respondent;
JUDY A. ORCHARD, Third Party Claimant and Appellant.

COUNSEL

Timothy P. Sperber for Third Party Claimant and Appellant.

No appearance for Respondent Joel S. Orchard.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Josanna Berkow, Deputy Attorneys General, for Respondent Danielle Jo Orchard.

## OPINION

KING, J.—In this case we hold that recording a certified copy of an order that child support payable under an attached judgment incorporated by reference shall be payable to the district attorney, creates a valid lien against the community real property of the obligor parent and his present spouse.

### I. *Facts*.

The real property that is the subject of this proceeding consists of approximately six acres of unimproved land in El Dorado County which was purchased by Judy and Joel Orchard on May 8, 1987, for $25,000. The couple paid $19,000 down and financed the $6,000 balance. They took title as husband and wife, and all purchase offers, counteroffers, financing transactions, and title documents were executed jointly in their names. On May 20, 1987, a certified copy of a document entitled "MOTION AND ORDER TO MAKE CHILD SUPPORT PAYMENTS PAYABLE TO SAN MATEO COUNTY AND THAT THE DISTRICT ATTORNEY ENFORCE SAID SUPPORT ORDER" was recorded in the official records of El Dorado County. Joel was the named respondent in the motion and order. This document stated that by a judgment attached thereto and incorporated by reference filed August 6, 1980, Joel was ordered to make support payments of $150 per month for his minor child. He had paid nothing for over six years, and Danielle Jo Orchard, Joel's former wife, had enlisted the aid of the Office of the District Attorney in San Mateo County to collect the overdue child support. (Civ. Code, § 4702, subd. (b).) On the basis of recording this certified copy of the original document, the district attorney claimed a judgment lien on the subject real property and sought to enforce the judgment through a sheriff's sale of the property.

On October 15, 1987, after the order was recorded, Joel quitclaimed any interest he might have in the subject property to his wife Judy. Thereafter, Judy filed a quiet title action in the El Dorado County Superior Court, naming Joel's former wife, Danielle, as defendant. On August 16, 1988, the San Mateo County Superior Court issued a writ of execution on the real

property for the unsatisfied child support arrearage of $14,231.86. In September 1988, the Sheriff of El Dorado County served notice that sale of the real property was scheduled for February 14, 1989.

After learning of the district attorney's efforts to enforce the judgment by execution and levy on the subject property, Judy filed a motion in the El Dorado County Superior Court in January 1989 seeking summary adjudication of certain issues which would have been dispositive of the case. Specifically, Judy sought to stay or quash the writ of execution by arguing that the parcel was her separate property and was free from the community obligations. She alleged that she and Joel always agreed and intended that the property be her separate property, and title to the property was taken as husband and wife only to obtain financing to make improvements to the property. In a classic bit of understatement, she claimed they "were wholly unaware of the consequences of taking title to [her] property as husband and wife." The El Dorado County Superior Court refused to stay or quash the writ on the ground that an action relating thereto was pending in the San Mateo County Superior Court.

On February 10, 1989, Judy filed her third party claim with the El Dorado County Sheriff, halting the sale of the property scheduled for February 14, 1989. After hearing argument on March 14, 1989, the San Mateo County Superior Court denied Judy's third party claim of sole ownership of the property and directed sale of the property with the proceeds to be used to satisfy Joel's child support obligation.

II.  *Was the Lien Properly Recorded?*

■ Judy first claims that the district attorney's attempt to establish a lien against the real property was inadequate because a certified copy of the judgment for child support was not recorded, rendering the lien a nullity. The exclusive method of establishing a lien on a judgment debtor's real property for overdue child support payments is prescribed by Code of Civil Procedure section 697.320. (*Ellrott* v. *Bliss* (1983) 147 Cal.App.3d 901, 905 [195 Cal.Rptr. 446].) Code of Civil Procedure section 697.320 provides in pertinent part: "A judgment lien on real property is created under this section by recording an abstract or a certified copy of any of the following money judgments with the county recorder: [¶] (1) A judgment for spousal or child support payable in installments . . . ." In attempting to escape the legal effect of the judgment lien on the property, Judy makes a very technical argument that because the judgment for child support was attached "as an exhibit" to the principal document that was recorded, the above-cited recording statute was not complied with. Significantly, there is no dispute that the document specified by Code of Civil Procedure section 697.320 *was*

included in the certified documents that were recorded—Judy's only complaint is that the judgment for child support was not the face document but followed the order to make child support payments to San Mateo County.

The reported cases involving statutory requirements for recording liens can generally be broken down into two categories. On the one hand, courts have shown no hesitation to nullify liens against real property where mandated information was *omitted* from the documents recorded. (See, e.g., *Ellrott* v. *Bliss, supra*, 147 Cal.App.3d at p. 902 [abstract of judgment recorded was inadequate and its recording a nullity where statute required a certified copy of the judgment]; *Keele* v. *Reich* (1985) 169 Cal.App.3d 1129 [215 Cal.Rptr. 756] [omission of the judgment debtor's known Social Security number prevented proper recordation and nullified the lien because this information was mandated by statute]. On the other hand, courts have shown a willingness to find compliance with mandated recordation procedures when all of the required data is *included* but there is a dispute as to form. (See, e.g., *Robbins Invest. Co.* v. *Robbins* (1942) 49 Cal.App.2d 446 [122 P.2d 91] [lien established where judgment transcribed in full and included more information than was statutorily required]; *Commonwealth Land Title Co.* v. *Kornbluth* (1985) 175 Cal.App.3d 518 [220 Cal.Rptr. 774] [that date of entry of judgment included on all documents except one did not render abstract void because information not omitted entirely].

Insofar as the mandated document (the judgment for child support) was included in the documents recorded in the official records of El Dorado County, Judy's argument is one of formality rather than substance and falls into the second category of cases. In reviewing these documents, no one would be misled by the fact that the first document in order of recordation happened to be the order to make child support payments to San Mateo County. In fact, that order makes specific reference to the judgment establishing child support and notes that the judgment is incorporated by reference. The judgment establishing Joel's obligation for child support is recorded a few pages later and is immediately accessible to anyone requiring notice of the lien on the property. Indeed, it was appropriate to record the order to make the child support payments to San Mateo County; otherwise, efforts to clear title by removal of the lien might result in payment to Danielle rather than the County. Thus the judgment for child support was properly recorded under Code of Civil Procedure section 697.320 and established a valid lien on the debtor's real property.

### III. *Did the San Mateo Court Have Jurisdiction?*

Judy next contends the San Mateo County Superior Court erred in not deferring jurisdiction as requested because the El Dorado County Supe-

rior Court was the first court to assume jurisdiction over the question of her right to sole possession of the property and retained exclusive and continuing jurisdiction until the matter was resolved. "[W]here several courts have concurrent jurisdiction over a certain type of proceeding, the first one to assume and exercise such jurisdiction in a particular case acquires an exclusive jurisdiction. Thereafter another court, though it might originally have taken jurisdiction, is wholly without power to interfere . . . ." (*Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 597 [107 P.2d 1, 131 A.L.R. 276].)

The parties are in sharp conflict on the question whether the El Dorado County Superior Court or the San Mateo County Superior Court was the first court to assume jurisdiction over this matter. As a factual basis for arguing the El Dorado action was first, Judy contends that jurisdiction was first conferred over the issues in this case as a result of the quiet title action she filed in El Dorado County in January 1988. In rebuttal, Danielle argues that the San Mateo action originally established Joel's support obligation and the San Mateo court retained continuing jurisdiction over the district attorney's efforts to enforce Joel's obligation by establishing and executing a lien on the subject real property. Logic dictates acceptance of Danielle's argument.

Judy filed her quiet title action in El Dorado County in response to the San Mateo County District Attorney establishing a lien on the subject property to enforce the San Mateo County judgment against her husband for overdue child support. It is clear that the gravamen of Judy's El Dorado action was to challenge the validity of the lien placed on the subject property as she sought to have the title quieted against Danielle, who was alleged to be asserting an adverse claim thereto. Since the lien first originated out of the San Mateo action, the San Mateo County Superior Court had continuing jurisdiction to determine the rights of all the parties pertaining to the validity of the lien, and the fact that Judy was not a named party in the San Mateo action would not prevent priority of jurisdiction from attaching. (See *Cutting* v. *Bryan* (1929) 206 Cal. 254, 257-258 [274 P. 326] [even though not a named party, wife is in privity with husband in suit against him involving community real estate].

In resolving this issue, we note that after Judy received notice of levy and sale of the property in September 1988, she requested the El Dorado County Superior Court to intervene and stay or quash the writ of execution and resolve the controverted issues raised herein. By Judy's own admission, the El Dorado County Superior Court "refused to stay or quash the writ on the ground that the action relating thereto was still pending in the San Mateo County Superior Court . . . ." The El Dorado court's refusal to exercise jurisdiction is not in question and appears to have been correct upon the

theory that the jurisdiction of the San Mateo court had been earlier invoked and partially exercised.

### IV. *Did Substantial Evidence Support the Judgment?*

■ Judy argues the court erred in determining the real property at issue was community property and therefore liable for past due child support. (See Civ. Code, §§ 5120.110, subd. (a), 5120.150.) The record fully supports this finding. The grant deed conveyed the property to "Joel S. Orchard and Judy Orchard, husband and wife." The promissory note to the sellers of the property was executed by Joel and Judy Orchard, "jointly and severally." The deed of trust recorded by the sellers to secure the note was made by Joel and Judy Orchard as "husband and wife." The Orchards used cash for the down payment from a $19,000 insurance settlement in compensation for loss of their personal property in a fire, and Judy's community property earnings were used to make payments on the promissory note. We reject Judy's contention that the court was somehow bound to reject all of this evidence and to accept her evidence that, notwithstanding the form of the deed, there was an oral agreement or understanding with Joel that the property was Judy's separate property. "Whether the presumption [arising from the form of title] was rebutted was a question of fact for the trial court and is binding on the reviewing court unless manifestly without support in the evidence. [Citations.]" (*In re Marriage of Stitt* (1983) 147 Cal.App.3d 579, 585 [195 Cal.Rptr. 172].) Ample evidence supports the court's finding.

### V. *Disposition.*

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 1990.