[S. F. No. 5819.   In Bank.—April 1, 1914.]

WILLIAM F. TENNANT et al., Appellants, v. JOHN TENNANT MEMORIAL HOME (a Corporation), Defendant and Respondent; FRED W. TENNANT, Intervener and Appellant.

DEEDS—RESERVATION OF POWER TO REVOKE—VALIDITY OF INSTRUMENT. A grantor may reserve in his deed the right to revoke the deed as to all or any portion of the property therein described. Such reservation is not forbidden by the law.

ID.—SECTION 741 OF CIVIL CODE—WHETHER FORBIDS RESERVATION OF POWER TO REVOKE.—The provision of section 741 of the Civil Code, that "no future interest can be defeated or barred by an alienation or other act of the owner of the intermediate or precedent interest," does not forbid such reservations. That section refers solely to acts which the owner of the intermediate estate may do as such owner, or by virtue of such ownership, and has no application to acts done because he is also invested with a power of revocation entirely distinct from and independent of his ownership of the life estate.

ID.—RIGHT TO DISPOSE OF PROPERTY—CREATION OF ESTATES—IMPOSITION OF CONDITIONS OR RESERVATIONS.—The right to acquire and possess property, guaranteed by the constitution, includes the right

to dispose of it, or any part of it, and for that purpose to divide it in any possible manner, either by separating it into estates for successive periods or otherwise, and disposing of one or more of such estates. It also includes the right to impose upon the grant of such estates any reservations or conditions which the grantor may see fit. The *only* limitation upon these rights is that they must be exercised in a way not forbidden by law.

ID.—RESERVATION OF LIFE ESTATE AND POWER OF REVOCATION— WHETHER MAKES INSTRUMENT TESTAMENTARY.—An instrument, otherwise a deed, is not rendered testamentary in character because the grantor reserves a life estate in the property, and also reserves the right to revoke the instrument or to sell the property at any time.

ID.—INSTRUMENT—WHETHER DEED OR WILL—TESTS FOR DETERMINING. An instrument is declared to be testamentary in nature only when, and because, it appears from its terms that the intention of the maker thereof was that it should not be operative as a conveyance or disposition of the property, or of any interest, present or future, therein, until his death. If the instrument, according to its proper legal effect under the rules of conveyancing, passes at the time of its execution a present interest or title in the property to a third person, although it may be only an interest in a future estate and may be subject to defeat on the happening or nonoccurrence of a future event, it is a present conveyance and not a will.

APPEAL from a judgment of the Superior Court of Monterey County. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

George W. Waldorf, John P. Fitzgerald, C. C. Coolidge, and Snow & Freman, for Appellants.

Daugherty & Lacey, and S. W. Mack, for Respondent.

R. H. Willey, for Intervener.

S. F. Leib, and J. F. Bowie, *Amici Curiae.*

SHAW, J.—On the seventh day of May, 1901, Margaret Tennant executed to the defendant, John Tennant Memorial Home, a deed purporting to grant and convey to it certain real property, "subject to the exceptions and reservations" thereinafter mentioned. Afterward she died and her heirs begun and are prosecuting this action to quiet their title to the land

and recover possession thereof, claiming that said deed is void. The administrator of her estate intervened and filed a complaint asking the same relief on behalf of her estate. The court below gave judgment for the defendant, from which the plaintiffs and the intervener appeal.

The exceptions and reservations mentioned in the opening clause of the deed are inserted therein immediately following the description of the property. They are as follows:

"Excepting, however, and reserving to said grantor the exclusive possession and the use and enjoyment in her own right, of the rents, issues and profits of said lots and each of them for and during the term of her natural life."

"And further reserving to the said grantor the right to revoke this deed as to the said property above described or as to any portion thereof, and further reserving to her, the said grantor, the right during her natural life to sell any of the above described property, and to sign and execute deeds therefor in her own individual name and to convey by any such deed a full, perfect and absolute title thereto to the purchaser thereof, and with right to use the proceeds arising from such sale or sales to her own use, without any liability for her or her estate to account therefor. In case of such revocation being made, it shall be made and can only be made in writing, duly acknowledged and recorded."

Margaret Tennant did not exercise, or attempt to exercise the power to revoke the deed, nor the power to sell and convey the property, or any part thereof. The decision of the case depends on the validity of the deed. If it is valid, the judgment below was correct; if invalid, the judgment must be reversed.

The appellants contend that the law of this state does not permit the insertion in a deed of a reservation of power to revoke it. Ordinarily, if a reservation is void, either for repugnancy, or because it is contrary to law, the result is to leave the conveyance absolute. The appellants, however, claim that the deed being presumptively a gift, this result would be so destructive of the object and purpose of the grantor that the deed must be declared wholly void. There may be force in this argument, but we need not consider it further here, for we are of the opinion that the law does not forbid such reservations.

Under the ancient common law, there was a rule to the effect that where a transfer was made by feoffment and livery. of seisin, any power of revocation reserved in the feoffment itself was void, on the ground that it was repugnant to the grant. The rule arose from the peculiar nature and purpose of the ceremony of livery of seisin which was a necessary part of an alienation by feoffment. It consisted of a formal delivery of possession on the premises, symbolized by the manual delivery of a clod or piece of turf from the land, all of which was done in the presence of witnesses from the vicinage. The publicity was required because in those times there were no public records of conveyances and it was necessary in some way to preserve evidence of the transfer. For this reason the ceremony was required and the presence of witnesses was necessary. (4 Kent's Commentaries *480.) As this purpose would be defeated if the accompanying deed contained a reservation of power to revoke it, so that thereby the transfer could be absolutely defeated and a retransfer effected without such public ceremony or witnesses, the courts were forced to hold that such reservation in a feoffment was void. (1 Sugden on Powers 2.) It is this asserted invalidity of such reservations at common law to which the appellants resort in support of their argument on this point.

It is true that the common law of England, so far as it is not inconsistent with our statutes, is the rule of decision in this state. (Pol. Code, sec. 4468.) But all the rules of common law are subject to the provisions of our statutes; statutes in derogation of common law are not now to be strictly construed, and the provisions of the codes contrary thereto are to be "liberally construed with a view to effect its object." (Civ. Code, sec. 4.) An important provision bearing on this question is that contained in section 3510 of the Civil Code: "When the reason of a rule ceases, so should the rule itself." The scheme provided by the code for the transfer of lands and the record of conveyances thereof has removed all the reasons on which the aforesaid rule of the common law was founded. Independent of any provisions of the code directly upon the subject, therefore, it may well be doubted whether this rule would now be followed in this state. It has long since ceased to exist in England, the statute of uses having practically abrogated it. There may have been good reasons

for holding that these old statutes which had become so ingrained in the law of England as to be usually considered as a part of its established common law were also a part of the common law which was to be the "rule of decision" in this state, under section 4468 aforesaid. But it has been held that the statute of uses is not a part of the common law to which that section refers. (*McCurdy* v. *Otto,* 140 Cal. 53, [73 Pac. 748].) The provisions of the Civil Code remove all doubt of the proposition that reservations of the kind here involved are not necessarily invalid.

A deed could be so drawn as to make a reservation of this kind repugnant to the grant, in which case it might perhaps be void under section 1441 of the Civil Code. In this deed it could not be so, because the granting clause itself declares that it is "subject to" the reservations thereinafter set forth.

The effect of the reservation of the life estate is that the deed conveys a future interest, only, to the grantee. In respect to the time of enjoyment, an interest in realty is either present or future (sec. 688). A future interest entitles the *owner* to the possession of the property only at a future period (sec. 690). A future interest is a vested interest when there is a person in being who will have a right, defeasible or indefeasible, to the immediate possession of the property when the intermediate estate or interest ceases (sec. 694). This deed therefore purports to pass to the grantee at once a vested future interest in the land, said interest being the entire fee following the termination of the reserved life estate. Such interests may be transferred in the same manner as present interests (sec. 699). Section 740 is as follows:

"A future interest may be defeated in any manner or by any act or means which the party creating such interest provided for or authorized in the creation thereof; nor is a future interest, thus liable to be defeated, to be on that ground adjudged void in its creation."

This language is very broad and it clearly authorizes the party who creates a future interest by deed to provide, in the deed creating it, for the defeat of such interest, by means of a power of revocation reserved therein, to be exercised by the grantor, or by any other appropriate means. It contains at least a very strong implication that the reservation of such power of reservation, as a means of defeating the interest, is

not contrary to law. The right to acquire and possess property, guaranteed by the constitution, includes the right to dispose of it, or any part of it, and for that purpose to divide it in any possible manner, either by separating it into estates for successive periods or otherwise, and to dispose of one or more of such estates. It also includes the right to impose upon the grant of such estates any reservations or conditions which the grantor may see fit to place in the grant. The only limitation upon these rights is that they must be exercised in a way not forbidden by law. There is nothing in the provisions of the codes, or in any statute, which purports to forbid such reservations. Aside from the implied permission in the above section, therefore, the reasonable conclusion would be that it was one of the inherent rights of every landowner to include such a reservation in a grant of his land. That this was understood to be the law by our codifiers is further shown by the provisions of sections 1229 and 1230 of the Civil Code. They are as follows:

1229. "Where a power to revoke or modify an instrument affecting the title to, or the enjoyment of, an estate in real property, is reserved to the grantor, or given to any other person, a subsequent grant of, or charge upon, the estate, by the person having the power of revocation, in favor of a purchaser or encumbrancer for value, operates as a revocation of the original instrument, to the extent of the power, in favor of such purchaser or encumbrancer."

1230. "Where a person having a power of revocation, within the provisions of the last section, is not entitled to execute it until after the time at which he makes such grant or charge as is described in that section, the power is deemed to be executed as soon as he is entitled to execute it."

Each of these sections is based on the assumption that the reservations mentioned would be valid if made. Furthermore, they entirely remove the foundation upon which these reservations, when inserted in deeds of feoffment, were held to be void, that is to prevent the danger of secret transfers, to the detriment of the lord of the manor, or subsequent purchasers or encumbrancers. There is now no lord of the manor, and the sections provide a complete protection to subsequent purchasers or encumbrancers for value. Furthermore, the effect of the decisions of this court is that such reservations

are valid. The aforesaid sections 1229 and 1230 cannot be distinguished from section 2280, so far as they may be considered as a recognition of the validity of such a reservation. Section 2280 applies to trust estates, only, while these sections apply generally to all estates. Otherwise they point as fully to such validity as does section 2280. The latter is as follows:

"A trust cannot be revoked by the trustor after the acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the · beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued."

In *Nichols* v. *Emery*, 109 Cal. 323, [50 Am. St. Rep. 43, 41 Pac. 1089], and again in *Estate of Willey*, 128 Cal. 9, [60 Pac. 471], it was held that this section was a distinct recognition of the proposition that such reservations in a deed creating a trust are valid. There is no substantial difference in principle between the case of a deed creating a trust, with such a reservation inserted, and an ordinary conveyance of land, as in the case at bar, with a similar reservation, nor between the effect of sections 1229 and 1230, as giving an implied authority to make such reservations or as a recognition of their validity, and that of section 2280 with respect to trust estates. No reason applies to trust deeds that does not apply as strongly to ordinary conveyances. It has also been held that a gift of personal property may be made with a valid express reservation of power in the donor to revoke it, in whole or in part. (*Hellman* v. *McWilliams*, 70 Cal. 449, [11 Pac. 659]; *Booth* v. *Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370]; *Noble* v. *Learned*, 153 Cal. 245, [94 Pac. 1047].) In view of these decisions and considerations, it is clear that our law does not forbid such reservations and that they are valid.

The argument that such revocations are forbidden by the provision of section 741 that "no future interest can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent interest," is based on a misconception of the intent and purpose of that section and of the effect of this deed. As the owner of the intermediate estate, Margaret Tennant was given no power to revoke the deed. That power was reserved to her as grantor. A revocation by her would not have been an act in virtue of her ownership of the life estate. It was a mere coincidence that she also

owned the life estate. If the deed had granted the life estate to another, reserving the same power in the grantor, section 741 would be wholly inapplicable. That section refers solely to acts which the owner of the intermediate estate may do as such owner, or by virtue of such ownership, and has no application to acts done because she is also invested with a power of revocation entirely distinct from and independent of her ownership of the life estate.

The main contention of the appellants is that the deed in question is not a present grant of property, so far as the remainder is concerned, but is an instrument testamentary in character and therefore invalid as a disposition of the property, because it is not executed with the formalities necessary to the execution of a will.

The rules by which to determine whether or not an instrument purporting to dispose of property is testamentary in character are clearly stated in *Nichols* v. *Emery,* 109 Cal. 323, at page 329, [50 Am. St. Rep. 43, 41 Pac. 1089], as follows: "The essential characteristic of an instrument testamentary in its nature is, that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate, and *per contra* no rights have accrued to and no estate has vested in any other person. The death of the maker establishes for the first time the character of the instrument. It at once ceases to be ambulatory, it acquires a fixed *status* and operates as a conveyance of title. Its admission to probate is merely a judicial declaration of that *status.* On the other hand, to the creation of a valid express trust it is essential that some estate or interest should be conveyed to the trustee, and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately. By such a trust, therefore, something of the settlor's interest has passed from him and into the trustee for the benefit of the *cestui,* and this transfer of interest is a present one and in nowise dependent upon the settlor's death. But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the *cestui* may be made to commence in the future and to depend for its commencement upon

the termination of an existing life or lives or of an intermediate estate."

That this was said with regard to a conveyance creating a trust does not detract in the least from its force as applied to the case of a conveyance which does not create a trust. The instrument there considered and declared to be not testamentary in nature, was not so held because it created a trust, but because its operation upon the property to pass an interest therein was not deferred until the grantor's death, but was instantaneous upon the execution of the instrument. If it thus operates to pass an interest at the time of its execution, although such interest is in remainder after the termination of the life estate of the grantor, that is, a vested future interest, the mere fact that such remainder, when it comes into the possession of the grantee, will be in the one case his absolute property and in the other a property held by him in trust for others, is not a factor in the problem and cannot affect the character of the conveyance, or make it otherwise than a present grant of a future estate.

So, also, the fact that in this case there is also reserved a power to revoke the deed and to sell the remainder, is of no consequence in the argument upon the question whether it is or is not testamentary. The power of revocation being valid, its exercise would at once revest the title in the grantor and she would then have absolute power to dispose of it by deed or otherwise. The power of sale reserved is therefore of no consequence, since it was necessarily included in the power to revoke. The reservation of the power to revoke did not operate to destroy, or in anywise restrict the effect of the deed as a present conveyance of a future vested interest. It merely afforded the means whereby such vested future estate could be defeated and divested before it ripened into an estate in possession. In *Nichols* v. *Emery,* 109 Cal. 323, [50 Am. St. Rep. 43, 41 Pac. 1089], the same point was urged and the court said: "Nor did the fact that the settlor reserved the power to revoke the trust operate to destroy it or change its character. He had the right to make the reservation, but the trust remained operative and absolute until the right was exercised in the proper mode." The court there used the word "trust" as a convenient designation of the instrument creating it, for the deed of trust made no disposition of the

property other than in trust. That decision is decisive of the present case on this point.

Another argument presented in favor of the proposition that this deed is testamentary in nature is founded upon the circumstance that the disposition which the grantor thereby made of the property conveyed was substantially the same as she might have made by a will, so far as her enjoyment of the property and her control over the fee is concerned. This circumstance does not determine the effect of the deed and has but little bearing on the question. An instrument is declared to be testamentary in nature only when, and because, it appears from its terms that the intention of the maker thereof was that it should not be operative as a conveyance or disposition of the property, or of any interest, present or future, therein, until his death. This is always essential. If the instrument, according to its proper legal effect under the rules of conveyancing, passes at the time of its execution a present interest or title in the property to a third person, although it may be only an interest in a future estate and may be subject to defeat on the happening or nonoccurrence of a future event, it is a present conveyance and not a will. We do not think the fact that if the grantor had not at that time made this deed, but instead had made her will giving this property to the respondent, she would then have continued to enjoy the property until her death, in the same manner and as fully as she did thereafter enjoy it by reason of her reservation in the deed of an estate therein during her life, constitutes a reason for holding the deed to be a testamentary disposition. Notwithstanding these reservations and this privilege of enjoyment, she did then, in fact and in law, convey to the grantee the future estate which, at her death, became an estate in possession, to said grantee. The deed was not the same, in effect, as a will. It passed a present interest in the remainder, upon the contingency that the grantor should not, during her life, convey to another, or revoke the deed. The will would have had no such effect. The contingencies did not happen, hence the estate is now absolute.

The judgment is affirmed.

Henshaw, J., Melvin, J., Lorigan, J., Sloss, J., and Angellotti, J., concurred.