[Civ. No. 28818.    Second Dist., Div. Four.    Nov. 7, 1966.]

JOHN RUPP, Plaintiff and Appellant, v. MAUDEEN CLIFTON KAHN, Individually and as Executrix, etc., Defendant and Respondent.

Anderson, McPharlin & Conners, Frank G. King and George C. Montgomery for Plaintiff and Appellant.

Robert A. Mendelson for Defendant and Respondent.

KINGSLEY, J.—Plaintiff sued defendant Maudeen Clifton Kahn, both individually as the surviving joint tenant of Sam Kahn and as executrix of his last will and testament. Two causes of action were alleged. The first was on a rejected creditor's claim. It alleges that plaintiff is the holder of a promissory note, executed by decedent, in the face amount of $1,000, on which it is alleged that there was due, as of December 5, 1961, $903.58 plus accrued interest and attorney fees. It is also alleged that a verified claim for the amount due was filed "on March 6, 1963," and that, "on September 18, 1963" plaintiff had received a formal notice of rejection of that claim. Prayer was for recovery on the rejected claim.

The second cause of action incorporates the allegations of the first cause of action and then alleges: (a) that defendant has filed her inventory in the probate estate, showing assets of $1,052.35, and that a report of the inheritance tax appraiser shows joint tenancy property in the amount of $49,000; (b)

that decedent, at a time when he was in ill health and insolvent, had acquired sundry pieces of real property and sundry notes and trust deeds, taking title in the names of himself and defendant as joint tenants; (c) that decedent had also acquired, while in ill health and insolvent, sundry other assets, taking title in the names of himself and defendant as husband and wife; (d) that none of such property had been inventoried as assets of the decedent's estate. This cause of action seeks a declaration that defendant holds the joint tenancy property as a trustee for the benefit of plaintiff as a creditor and that she is under a duty to inventory in the estate the other property which, the complaint contends, is either community property or held as tenants in common.

Defendant demurred. The court overruled the demurrer to the first cause of action and sustained the demurrer to the second cause of action (in declaratory relief) without leave to amend. Plaintiff's motion to reconsider was granted; the ruling was affirmed; plaintiff's motion to sever the causes of action was granted; the cause of action on the rejected creditor's claim was transferred to the municipal court. A judgment of dismissal was entered on the second cause of action. Plaintiff appeals.

The court, in its order sustaining the demurrer without leave to amend, stated that (1) any such assertions represent contingent liability to be asserted by creditor's claims and none is averred, and (2) a conveyance to oneself in joint tenancy still leaves the debtor vested with title, which is not conveyed away in fraud of creditors nor put beyond their reach.

■ ■ ■ ■ The sole issue raised by the parties is whether or not the trial court erred in sustaining defendant's demurrer without leave to amend.[1] We conclude that the order was in error.

---

[1]Plaintiff complains of the action of the trial court in including, in its order sustaining the demurrer, the explanation summarized above. He cites *Kritzer* v. *Lancaster* (1950) 96 Cal.App.2d 1 [214 P.2d 407], but the rule of that case was changed, in 1961, by the adoption of section 472d of the Code of Civil Procedure. However, what was done here is something different from the mere statement of the ground of the demurrer which would satisfy section 472d. Here the trial court has explained, not the *ground* of his ruling, but his *reasons*—a practice which has been called commendable. (See *Steele* v. *Superior Court* (1961) 56 Cal.2d 402, 405 [15 Cal.Rptr. 116, 364 P.2d 292].) However, while it is helpful to have the trial judge's reasons made express, we review here his decision and not his reasons. (*Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212 [36 Cal.Rptr. 537].)

# I

■ Although, at plaintiff's request after the demurrer was sustained for the second time, the first cause of action was severed and transferred to the municipal court, its allegations are still before us on this appeal, since they were incorporated by reference into the second cause of action.

■ It is clear that, in order for plaintiff to have the status of a creditor of the probate estate, he must have filed a claim, as required by section 707 of the Probate Code. ■ As above indicated, plaintiff alleged the filing of such a claim and its rejection. However, the complaint neither alleges that the claim was filed within the time required by law (six months after first publication of a notice to creditors), nor does it *allege* any dates from which the fact of timely filing could be determined.[2] It has been held that such an allegation is a necessary allegation in an action on a rejected claim and that its omission is fatal. (*Hays* v. *Bank of America* (1945) 71 Cal.App.2d 301 [162 P.2d 679].) This omission, however, is one which might have been cured by amendment and, while it was a proper ground for sustaining a demurrer, it does not sustain a refusal of leave to amend; were this the only discoverable defect the judgment could not stand. There are, however, other problems to be considered.

# II

■ While a superior court sitting in probate has no jurisdiction to determine disputes between a representative of an estate and a third person involving conflicting claims to property, it is the proper and preferred practice for a dispute over property, wherein the personal representative claims adversely to the estate, to be submitted to the probate court and not to the superior court sitting in a non-probate capacity. (*Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361, 373 [273 P.2d 897] : 4 Witkin, Summary of Cal. Law (7th ed. 1960) Wills and Probate, § 165, p. 3154.) ■ However, that jurisdiction is not exclusive and, under proper circumstances, a suit in the nature of a creditor's bill may be brought in the superior court under the general equity powers of that court. In *Schly-*

---

[2]Although the essential dates are not actually alleged, the copy of the claim attached as an exhibit to the complaint suggests that the filing was timely. In the claim form, the date of death is stated as being December 21, 1962. The claim was filed on March 6, 1963. Unless it preceded the publication of the notice to creditors, it must (if the date of death is correctly given) have been filed within six months after that publication. Express and verified allegations should easily be forthcoming.

*en* v. *Schlyen, supra,* the Supreme Court stated the rules governing this alternative jurisdiction in the following terms (p. 378) : ''From the foregoing it is concluded: (1) that the superior court has general jurisdiction in equity cases such as the present one; (2) that in the absence of a demurrer answer, motion or other timely objection on the ground that the issues involved should be tried in probate, the superior court may adjudicate those issues with the same force and effect as if the objection had not been made; (3) that when as here the issues pertain only to the rights of parties in privity with the estate and do not involve the rights of third parties or strangers to the estate the superior court sitting in probate has jurisdiction and should adjudicate them, but that such jurisdiction is not exclusive, depending on the facts of the particular case and may be waived; (4) . . . , and (5) that when such objection is timely made the trial court should not dismiss the action but should try it as a matter in probate to the end that property wrongfully claimed by the representative of the estate be included in the assets of the estate. ''

▮ In the instant case, no objection, by demurrer or otherwise, was made to the complaint on the ground that the matters involved in the second cause of action should be heard in probate, and this issue was not adverted to in the trial court's order. It follows that, as in *Schlyen,* the right to have the matter heard as part of the probate proceeding was waived and, if plaintiff's complaint was otherwise proper, or could be made so by amendment, the dismissal was erroneous.

### III

▮ The trial court ruled, in accordance with the contention of defendant, that plaintiff's claims as asserted in his second cause of action, amounted to a contingent claim against the estate, to which claim also the provisions of section 707 of the Probate Code were applicable. There being no allegation of the filing of such claim, the trial court held that no cause of action was stated.

In so ruling, the trial court was in error. The present proceeding is not based on a new or different claim against the estate. Plaintiff's ''claim'' is to recover on the promissory note executed by decedent. All that he seeks here is to bring into the estate sufficient assets to satisfy that claim. As we have pointed out above, he could have accomplished that end by objections filed in the probate proceeding, challenging the executrix' account, or by other action there. His status as a

"claimant" is not changed by reason of his use of the device of a creditor's bill.

## IV

As a second ground for sustaining the demurrer, the trial court ruled that taking title in joint tenancy, even by an insolvent, is not a transaction in fraud of creditors, since the purchase price transferred for such title does not result in the property purchased being beyond the creditor's reach.

We are cited to no California cases on this point and have found none. Counsel cite us to one New Jersey case and we have found one other from that state; neither is particularly helpful.

In *Brodzinski* v. *Pulek* (1961) 70 N.J. Super. 63 [174 A.2d 907],[3] a lower New Jersey court made the statement that the creation of a joint tenancy was not a "conveyance" within the meaning of the New Jersey Fraudulent Conveyance Act. However, the statement is dictum, since the court based its decision on a finding that the debtor was not insolvent when the joint tenancy was created and on other grounds not here pertinent, rather than on the point herein in issue.

In *Reynolds* v. *Danko* (1944) 134 N.J. Eq. 560 [36 A.2d 420], it was held that the purchase of Series "E" United States Savings Bonds in the name of the purchaser, but with a provision making them payable on death to another, was not a conveyance of the purchase price in fraud of creditors. But this transaction did not affect the amount of assets owned by the purchaser during his lifetime, nor did it affect the rights of his creditors to reach those assets so long as he lived.

On principle, we think that, if plaintiff is a person entitled to complain of the transaction, it was, if made while decedent was in fact and in law insolvent, a fraudulent conveyance. ▉ Upon its creation, each joint tenant is vested with title to an undivided one-half of the joint tenancy property, with power to convey that half interest and thereby terminate the joint tenancy. ▉ And a creditor may levy only on the undivided one-half interest of his debtor. ▉ It follows that, by taking title in joint tenancy, decedent effectively placed one-half of the property so acquired—namely the interest thereby immediately vesting in defendant wife—beyond the reach of his creditors during his lifetime and, as to that one-half interest, his creditors had a clear right to complain.

---

[3]Modified in *Brodzinsky* v. *Pulek* (1962) 75 N.J. Super. 40 [182 A.2d 149].

· While the effect on creditors' rights is not so immediate as to the one-half remaining in decedent, we think that that portion of the conveyance is also subject to attack. ▮ While each joint tenant has in his power the opportunity, by severing the joint tenancy, to vest complete title in himself to one-half of the property and, thereby, free the remainder to vest absolutely in his joint tenant, still, unless and until the tenancy is so severed, each tenant has an interest in the entire property. ▮ When, on the death of one joint tenant, the complete title vests in the survivor, it does so by reason of an interest existing from the moment the joint tenancy was created. It would not be doubted that a conveyance by an insolvent debtor without consideration, whereby he conveyed an interest contingent on the grantee surviving him, reserving life estate in himself, would be open to attack. The economic effect of the creditors is not significantly different here. ▮ We conclude that the entire title held by a surviving joint tenant, resulting from a conveyance by an insolvent without consideration, is subject to the debts of the transferor.[4]

## V

▮ The parties have briefed the case here as though the only property involved was the joint tenancy property. But paragraphs VII, VIII and IX of the second cause of action allege the existence of certain assets which, it is alleged, were either community property or held as tenants in common, and allege that such assets have not been inventoried in the probate estate.

If these allegations are true, clearly the executrix has been either negligent or dishonest, since all community property is subject to administration in the husband's estate (Prob. Code, § 202), and, obviously, the decedent's interest as a tenant in common is likewise part of the probate estate. ▮ Further, it follows from what has been said above, that, if these properties were acquired as tenants in common, without consideration, from decedent's property, while he was insolvent, the one-half interest vested in his wife was a result of a conveyance subject to attack by his creditors.

---

[4]It must be remembered that, at common law, the joint tenancy could have been created only by first conveying the property in totality to a third person and taking back, from that transferee, the conveyance in joint tenancy. The effect of such a procedure on the creditors' rights is obvious. The fact that modern law eliminates the need for the intermediary seems to us immaterial.

## VI

As we have noted above, after the trial court sustained the demurrer without leave for the second time, there resulted a two-part order: On plaintiff's motion, the first cause of action was severed and transferred to the municipal court; on the court's own motion, the second cause of action was dismissed. As a result, so far as this record discloses, plaintiff has not yet been adjudicated to be a creditor of the estate. For many years, this would have been fatal to his case, since the California law originally permitted proceedings by way of creditors' bills to attack fraudulent conveyances only where the plaintiff had a specific lien on the property or had reduced his claim to judgment. But under section 3439.09 of the Civil Code, as that section now reads, it is sufficient that the claims have matured. (*Estate of Kalt* (1940) 16 Cal.2d 807, 811 [108 P.2d 401, 133 A.L.R. 1424] ; 4 Witkin, Summary of Cal. Law (7th ed. 1960) Equity, § 105, pp. 2880-2881.) In fact even the holder of an unmatured claim may, under section 3439.10 of the Civil Code, bring an action for protective relief.[5]

If plaintiff can, by amendment, show that his claim on the note was timely filed, he has otherwise stated a cause of action which entitles him to some relief.[6]

The judgment is reversed for further proceedings consistent with this opinion.

Files, P. J., and Jefferson, J., concurred.

---

[5]Civil Code section 3439.10 reads: ''Where a conveyance made. or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may: (a) Restrain the defendant from disposing of his property, (b) Appoint a receiver to take charge of his property, (c) Set aside a conveyance or annul the obligation, or (d) Make any order which the circumstances of the case may require.''

[6]The complaint does not expressly allege that the estate is insolvent and cannot pay plaintiff's claim unless the alleged assets are available. However, $903 plus interest and attorney fees and a minimum cost of administration would exceed $1052, so that the essential requirement that plaintiff have an interest in the extent of the inventoried estate assets does appear by inference, although more detailed allegations would be desirable.