Charlotte BUCHOLTZ; California Advocates For Nursing Home Reform, a nonprofit corporation, Plaintiffs–Appellees,

v.

Kimberly BELSHE, Director, Gerald Rohlfes, Chief of the Third Party Liability Branch of the California Department of Health Services; John Rodriguez, Chief Deputy Director of Programs of the California Department of Health Services, Defendants–Appellants.

No. 96–16438.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1997.

Decided June 6, 1997.

Beverley R. Meyers, Deputy Attorney General, San Francisco, California, for defendants-appellants.

Amitai Schwartz and Antonio Ponvert, III, Law Offices of Amitai Schwartz, San Francisco, California, for plaintiffs-appellees.

Before: D.W. NELSON and
FERNANDEZ, Circuit Judges, and
MOLLOY, District Judge.*

## OPINION

FERNANDEZ, Circuit Judge:

S. Kimberly Belshe, Director of the California Department of Health Services, and other officials of that Department (collectively Belshe) appeal from the district court's injunction in favor of Charlotte Bucholtz, Ernest Gentile, and Janet Cottrell, who brought this action on their own behalves and on behalf of all others similarly situated,[1] (collectively Bucholtz). The district court determined that the State of California was not entitled to recover certain Medi–Cal payments from the successors of deceased Medi–Cal recipients, when the successors received the property through revocable inter vivos trusts, or by passage without probate administration of property held in the form of tenancy in common or community property. The district court then enjoined Belshe from taking steps to recover from Bucholtz and further required steps directed toward the refund of money already recovered. We affirm in part, reverse in part, and remand.

## BACKGROUND

Although it might make for somewhat less interesting reading, we will not set forth the facts involved in the individual cases before us. That is because all of the cases follow the same essential pattern, and nothing turns on their individual differences as far as this litigation is concerned.

Basically, Medi–Cal recipients, who have since died, had placed property into revocable inter vivos trusts. When they died, the property went to the beneficiaries of the inter vivos trusts.

Belshe, however, asserted that the state had a Medi–Cal claim against the property and the beneficiaries because of California Welfare and Institutions Code § 14009.5, which allows for a claim "against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival." Bucholtz asserted that federal law precluded application of § 14009.5 to the beneficiaries of inter vivos trusts created by Medi–Cal recipients who died before October 1, 1993. See 42 U.S.C. § 1396p(b)(1) (1989).[2] The district court agreed with Bucholtz.

A similar, but far from the same, set of problems was presented by property which passed from Medi–Cal recipients without the necessity of probate administration because it was held in the form of tenancy in common or in the form of community property. The district court also resolved those issues against Belshe. This appeal followed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"A district court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles." *United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir.1994) (citation omitted). We review questions of law de novo. *See Twenty–Three Nineteen Creekside, Inc. v. Commissioner*, 59 F.3d 130, 131 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996).

## DISCUSSION

Medicaid is a federal program which provides medical assistance to eligible low-income persons and which is administered through the states under a cooperative federal-state funding scheme. A state's participation in Medicaid is voluntary, but participating states must comply with the federal Medicaid Act. California participates through its Medi–Cal program.

---

* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

1. Another plaintiff was California Advocates for Nursing Home Reform, but it did not purport to be a class representative. Our holdings as to Bucholtz apply to it also.

2. The law has been amended as to individuals who died after September 30, 1993. See Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13612, 107 Stat. 312, 627–28.

Under 42 U.S.C. § 1396p(b)(1),[3] states which participate in the program may not recover medical assistance amounts "correctly paid on behalf of an individual" except, as relevant here, "from his estate." It was pursuant to this enabling statute that California enacted the provision that allows amounts to be recovered from people who received property from a decedent "by distribution or survival." Cal.Welf. & Inst.Code § 14009.5(a).

It is undisputed that Belshe believes that § 14009.5(a) reaches property in which the decedent had an interest at his death, whether that property was held in joint tenancy, in an inter vivos trust, in tenancy in common, or in community property. Neither the parties, nor we, dispute her interpretation of that statutory provision. However, we have made it clear that to the extent that the California provision seeks to reach further than § 1396p(b)(1), it cannot stand.

We thoroughly explained that in *Citizens Action League v. Kizer*, 887 F.2d 1003 (9th Cir.1989). In *Kizer*, California was attempting to recover Medi–Cal payments from "persons who by right of survivorship have succeeded to property they formerly held in joint tenancy with a benefits recipient." *Id.* at 1005. The survivors sued to turn aside the state's claims, and we said:

> In construing the statute, we look first to its plain meaning. If the statutory language is unambiguous, its plain meaning controls unless Congress has "clearly expressed" a contrary legislative intention. In addition, unless Congress has made manifest an intent to the contrary, a presumption obtains that when Congress uses a common law term, it intends to use it in its common law sense.

> Federal Medicaid law limits a participating state's ability to recoup benefits as follows: "No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except ... from his *estate.*" Because Congress did not define "estate" in the Act, we look to its common law meaning in construing this statutory section.

At common law, "estate" excluded interests in a decedent's property that were formerly held in joint tenancy. Because the California statute is not so limited, appellants' argument is compelling.

*Id.* at 1006 (citations and footnote omitted). We, therefore, agreed that "use of the word 'estate' in the recoupment provision limits a state's recovery to property which descends to the recipient's heir or the beneficiaries of the recipient's will upon death." *Id.* at 1005. In so doing, we also noted that even the California statute distinguished between the "estate" of the decedent and property which passed by "distribution or survival." *Id.* at 1006 n. 3. But, again, the federal statute was limited to the estate itself. Thus, the state's claims failed.

Belshe cannot avoid the holding or implications of *Kizer*, but bridles under it and seeks some solace from the fact that Congress has now amended § 1396p(b)(1) to provide that a decedent's estate for purposes of recovery includes assets within his "estate, as defined for purposes of State probate law," and may, at the state's option, include assets which pass through "joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." 42 U.S.C. § 1396p(b)(4)(A)–(B) (1993). That, however, does not help Belshe's cause. In the first place, it draws the salient distinction between the estate for probate law purposes and other forms of receiving title at death. More importantly, as we have already said, it does not apply to decedents who died before October 1, 1993, the class with which we are now dealing. That underscores the fact that the amendment was not simply a clarification of prior Congressional intent; it was a directive for the future. Therefore, it is from *Kizer* that we must take our lead as we turn to the questions raised in this case.

### A. *Inter Vivos Trusts.*

For these purposes, we see no principled distinction between property held in an inter vivos trust and property held in joint tenancy. It is a commonplace that property held in a revocable inter vivos trust is entirely apart from the trustor's own estate. The trust is an entity all its own; one which has

---

3. All references are to the section as it existed before October 1, 1993, unless otherwise stated.

been used for centuries to create different results from those which flow from personal ownership of property. The result of creating an inter vivos trust has been no different in California.

■■■ At common law, "[w]hen a person creates, and transfers property to, an inter vivos trust and the trust estate does not revert to the settlor's estate on his death, the trust property is not subject to probate administration in the settlor's estate." *Parrette v. Hutchison (In re Estate of Parrette)*, 165 Cal.App.3d 157, 164, 211 Cal.Rptr. 313, 318 (1985) (citation omitted); *see Valentine v. Read*, 50 Cal.App.4th 787, 792, 57 Cal. Rptr.2d 836, 840 (1996); *Parson v. Parson*, 49 Cal.App.4th 537, 541–42, 56 Cal.Rptr.2d 686, 688 (1996); *Bierschbach v. Heigho (Estate of Heigho)*, 186 Cal.App.2d 360, 364–65, 9 Cal.Rptr. 196, 201 (1960); *see also Belshe v. Hope*, 33 Cal.App.4th 161, 168–169, 38 Cal. Rptr.2d 917, 922 (1995) (trust transferred a present interest at its creation, was not a testamentary instrument, and property did not pass through estate). The property held in an inter vivos trust is not part of the decedent's estate, even if the decedent-settlor retained the power to revoke. *See Parson*, 49 Cal.App.4th at 541–42, 56 Cal.Rptr.2d at 688; *Parrette*, 165 Cal.App.3d at 164, 211 Cal.Rptr. at 318. Thus, by using accepted common law definitions—definitions used in California itself—property held in an inter vivos trust, like property held in joint tenancy, is not part of the decedent's "estate" for purposes of recovering Medicaid costs. *See Kizer*, 887 F.2d at 1006.

■■ In short, a decedent's property interests in revocable inter vivos trusts end at his death, and the property vests in accordance with the trust terms alone, just as a decedent's property interests held in joint tenancy end at his death, and the property vests in accordance with the terms of the joint tenancy provisions alone. Belshe, therefore, cannot pursue inter vivos trust beneficiaries any more than she can pursue joint tenants.

This is all underscored by *Hope*. There, Belshe sought to pursue revocable inter vivos trust beneficiaries and argued, as she does here, that the property should be treated as part of the decedent's estate because the trust was essentially testamentary in charac-

ter. *See Hope*, 33 Cal.App.4th at 164, 38 Cal.Rptr.2d at 919. The court pointed out that Belshe was misinterpreting California law as it had been outlined by the California Supreme Court in *Tennant v. John Tennant Mem'l Home*, 167 Cal. 570, 140 P. 242 (1914). As the California Court of Appeal wrote:

> *Tennant* holds exactly the opposite of what Department asserts it holds. *Tennant* holds that a trust such as the one here transfers a present interest at its creation. It further holds that the grantor can reserve powers of revocation without invalidating the trust.
>
> The above authorities demonstrate that the trust created by Myrtle Hope is a valid trust and is not a testamentary document.
>
> The Department also argues that because the heirs were not vested with a present interest prior to Myrtle's death, then the heirs took their property through Myrtle's estate. The Department again mischaracterizes language in *Tennant* and ignores its express finding rejecting the same argument made by the Department here and holding that the deed transferred a present interest in the remainder.

*Hope*, 33 Cal.App. 4th at 168–69, 38 Cal. Rptr.2d at 922 (citations omitted). The Court of Appeal was under no illusion that property in an inter vivos trust should be treated like property held as part of the decedent's estate. Rather, the court made it clear that inter vivos trust property is treated differently. It is true that *Hope* disagreed with our position in *Kizer* and opined that the word "estate," as used in 1396p(b)(1), should have a broader meaning than the one we gave it. *Id.* at 171, 38 Cal.Rptr.2d at 924. So be it, but we are bound by and will follow *Kizer*. Belshe cannot prevail.

B. *Tenancy in Common and Community Property.*

Property held in the form of tenancy in common or community property is only superficially similar to property held in joint tenancy or in a revocable inter vivos trust. While the decedent's interest in property held in the latter forms is not subject to his disposition at his death, property held in the former forms is. He may do what he likes with his share; he may devise and bequeath

it where he will, or allow it to pass under the laws of intestate succession, if that is his will. In other words, his share is generally subject to his disposition and to administration as part of his estate; it does not simply vest in others. This, surely, is the common understanding of those forms of ownership.

California has said as much regarding tenancy in common. *See England v. Young (In re Estate of England)*, 233 Cal.App.3d 1, 4 n. 2, 284 Cal.Rptr. 361, 362 n. 2 (1991) ("In a tenancy in common, each tenant has a separate but undivided interest in the property which can be conveyed by deed or will."); *Rupp v. Kahn*, 246 Cal.App.2d 188, 196, 55 Cal.Rptr. 108, 113 (1966) ("[T]he decedent's interest as a tenant in common is likewise part of the probate estate."); *Yeoman v. Sawyer*, 99 Cal.App.2d 43, 46, 221 P.2d 225, 227 (1950) (Because the parties held the property as tenants in common, upon decedent's death the undivided one half interest standing in decedent's name became a "separate, descendible interest." (citation omitted)).

California has been no less clear about interests in community property. *See Allen v. Graham (In re Marriage of Allen)*, 8 Cal.App.4th 1225, 1228, 10 Cal.Rptr.2d 916, 917 (1992) ("If the property was community property ... her mother's community half passed to her by virtue of the will."); *Komara v. Blair (Estate of Blair)*, 199 Cal. App.3d 161, 166, 244 Cal.Rptr. 627, 630 (1988) ("[I]f property is held as community property, one half belongs to the surviving spouse on the death of the other and the remaining half is subject to the testamentary disposition of the decedent."); *Rupp*, 246 Cal.App.2d at 196, 55 Cal.Rptr. at 113 ("[C]ommunity property is subject to administration in the [decedent's] estate...."); *Thompson v. Boyd*, 217 Cal.App.2d 365, 385, 32 Cal.Rptr. 513, 525 (1963) ("[C]ommunity property passing from the control of the [decedent] by reason of his death is subject to his debts and administration in his estate.").

All of this militates in favor of Belshe's position, and Bucholtz takes too simplistic a view of our decision in *Kizer* when she argues that simply because property can sometimes be received by a surviving spouse without actual "probate administration" it cannot be part of the estate. It is true that in *Kizer*

we mentioned the plaintiff's argument that because the joint tenancy bypassed probate, it was not part of the estate. *See* 887 F.2d at 1005. But we put no particular weight on that argument; rather, we held that the property was not part of the decedent's estate.

■ At one time, if property were part of the "estate," probate administration would almost certainly be called for. But legislatures in more modern times have sought to avoid the necessity and expenses of probate administration when there does not appear to be any particular reason to administer the estate. Thus, it has long been the law of California that if an estate is small enough, it can be transferred without actual probate administration. *See* Cal.Prob.Code §§ 13100–13116. The property is no less a part of the decedent's estate, but the expense of transferring it to the heirs or devisees is reduced. The property still passes in accordance with the directions in the decedent's will or by intestate succession. *See* Cal.Prob. Code §§ 13110, 13006. Moreover, the property remains liable for the decedent's debts. *See* Cal.Prob.Code § 13109. Clearly, it is part of the decedent's estate, even though it is not actually subjected to administration.

By the same token, the law of California now provides that assets held in the form of community (or separate) property can be transferred to the surviving spouse without probate administration, if the decedent wills it to her or if she would receive it through intestate succession. *See* Cal.Prob.Code §§ 13500–13506. The property remains subject to the decedent's debts. *See* Cal.Prob. Code § 13550. Again, it is perspicuous that the property has remained part of the decedent's estate, even though it has avoided actual administration.

Therefore, the mere fact that property which is part of the decedent's estate in every salient sense may not be put through the rigors of classical probate administration will not suffice to preclude California from proceeding against the recipients of the property for Medi–Cal reimbursement purposes.

## CONCLUSION

Once again we have been asked to traverse the territory which we covered in *Kizer*. We

have done so and hold that California may not pursue the beneficiaries of inter vivos trusts to recover the costs of Medi–Cal services provided to people who died before October 1, 1993. It may, however, pursue people who received property held by the decedent in the form of tenancy in common or community property. A proper reading of *Kizer* subtends both of these results.

We are not unmindful of the suggestion that the rights of recipients of property in which the decedent had an interest will vary depending on how that interest was held. However, people who engage in proper estate planning often achieve results different from, and better than, those obtained by people who are unwilling or unable to do so. Those results often flow from the form of holding title to property. We see nothing sinister about the fact that before October 1, 1993, people utilized the options that our sophisticated system of property law made available to them at the time.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.