[No. A096499. First Dist., Div. Four. Dec. 19, 2002.]

CONCHITA DIEDEN, Plaintiff, Cross-defendant and Respondent, v. STANLEY SCHMIDT, Defendant, Cross-complainant and Appellant.

[No. A096505. First Dist., Div. Four. Dec. 19, 2002.]

STANLEY SCHMIDT, Cross-complainant and Appellant, v. FIRST NATIONWIDE MORTGAGE CORPORATION, Cross-defendant and Respondent.

COUNSEL

Law Offices of Robert B. Jacobs and Robert B. Jacobs for Defendant, Cross-complainant and Appellant and for Cross-complainant and Appellant.

Harold M. Jaffe for Plaintiff, Cross-defendant and Respondent.

Wolfe & Wyman, Stuart B. Wolfe and Eric M. Schiffer for Cross-defendant and Respondent.

OPINION

**SEPULVEDA, J.**—The primary issue raised by this appeal is whether a judgment lien on a real property interest held by a tenant in common survives both a change in title to joint tenancy and the death of the debtor joint tenant. We hold that it does, and reverse the judgment and an order denying the judgment creditor his attorney fees.

I.

BACKGROUND

In 1981, Benjamin and Conchita Dieden sued Stanley Schmidt. The Diedens lost and the court entered judgment for Schmidt. The court awarded

Schmidt his attorney fees and costs. Schmidt recorded an abstract of judgment (the first abstract) and obtained a lien against real property located in Berkeley owned by the Diedens. Schmidt, however, did not force a sale of the Berkeley property.

In 1991, First Nationwide Bank made a loan to the Diedens secured by a deed of trust on the Berkeley property.

Schmidt renewed his judgment in 1992, but only against Benjamin Dieden.[1] Schmidt then recorded a second abstract of judgment. It is undisputed that at the time Schmidt recorded this abstract, the Diedens owned the Berkeley property as tenants in common.

In 1994, the Diedens conveyed their interests in the Berkeley property to themselves as joint tenants.

In 1998, Benjamin Dieden filed a complaint against Schmidt to quiet title to the Berkeley property. Benjamin, however, died in 1999, leaving Conchita as the surviving joint tenant.

Schmidt filed a cross-complaint for declaratory relief and foreclosure of lien against the Diedens and the successor to First Nationwide Bank, First Nationwide Mortgage Corporation (First Nationwide).

Schmidt, Conchita Dieden, and First Nationwide all filed motions for summary judgment. Schmidt also moved for an award of attorney fees incurred to enforce his judgment.

The trial court ruled first on the summary judgment motions of First Nationwide and Schmidt. It granted First Nationwide's motion and denied Schmidt's. The trial court found, based on undisputed facts and as a matter of law, that Schmidt's judgment lien terminated upon the death of Benjamin Dieden. The trial court entered judgment for First Nationwide and denied Schmidt's motion for attorney fees.

Schmidt appealed from both the judgment and the order denying his request for attorney fees.

A different judge then heard Conchita Dieden's motion for summary judgment and reached the opposite conclusion. That judge found Schmidt's lien had not been extinguished by Benjamin Dieden's death and denied Conchita's motion for summary judgment.

---

[1]Conchita Dieden had filed for bankruptcy and had apparently obtained a discharge of Schmidt's claim against her.

The order denying Conchita Dieden's summary judgment motion was not an appealable order. (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1293-1294 [91 Cal.Rptr.2d 60].) Conchita, however, is a respondent in this appeal based on the order denying Schmidt's request for attorney fees. She defends not only that order, but she also takes the opportunity to defend the first judge's ruling that Schmidt's judgment lien terminated upon the death of Benjamin.[2]

## II.

### DISCUSSION

#### A. *Survival of Judgment Lien*

There are no material disputed facts with respect to the issue of whether the judgment lien was extinguished when Benjamin Dieden died in 1999. ■ The application of the law to the undisputed facts is subject to our independent review. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

■ Neither the parties nor we have found any case law squarely on point. But we agree with Schmidt that the outcome of this case ultimately turns on the application of the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.).

We begin with a brief review of the relevant features of joint tenancies and tenancies in common. ■ The principal characteristic of a joint tenancy is the right of survivorship. (*Estate of Propst* (1990) 50 Cal.3d 448, 455 [268 Cal.Rptr. 114, 788 P.2d 628].) When one joint tenant dies, the entire estate automatically belongs to the other tenant. (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1317 [15 Cal.Rptr.2d 38].) The right of survivorship is an interest that exists from the moment the joint tenancy is created. (*Rupp v. Kahn* (1966) 246 Cal.App.2d 188, 196 [55 Cal.Rptr. 108].)

■ There is no right of survivorship in a tenancy in common. Instead, each tenant may pass his or her interest in the property to heirs and devisees. (*Estate of England* (1991) 233 Cal.App.3d 1, 4, fn. 2 [284 Cal.Rptr. 361].)

■ Cotenants (both joint tenants and tenants in common) may encumber their separate interest without the consent, and without affecting the interests, of other tenants. (*Schoenfeld v. Norberg* (1970) 11 Cal.App.3d 755, 765

---

[2]Schmidt has requested judicial notice of the documents filed in connection with Conchita Dieden's summary judgment motion. Those materials are part of the record on appeal and can be found in the respondent's appendix filed by Ms. Dieden. Therefore, the request for judicial notice is denied.

[90 Cal.Rptr. 47]; see 5 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 12:11, pp. 22-24.) A creditor, however, may only levy on the interest of the debtor tenant. (*Rupp v. Kahn, supra,* 246 Cal.App.2d at p. 195.) A purchaser at an execution sale succeeds to the interest of the debtor and becomes a tenant in common with the remaining owners. (See 5 Miller & Starr, Cal. Real Estate, *supra,* § 12:35, pp. 74-75.)

■ Respondents rely upon the settled law in California (and other jurisdictions) that a lien that has attached to the interest of a joint tenant expires upon the death of that tenant. (*Grothe v. Cortlandt Corp., supra,* 11 Cal.App.4th at p. 1318; *People v. Nogarr* (1958) 164 Cal.App.2d 591, 594 [330 P.2d 858, 67 A.L.R.2d 992]; *Zeigler v. Bonnell* (1942) 52 Cal.App.2d 217, 220 [126 P.2d 118] (*Zeigler*); see Annot., Judgment Lien or Levy of Execution on One Joint Tenant's Share or Interest as Severing Joint Tenancy (1987) 51 A.L.R.4th 906; see also *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 158-160 [133 Cal.Rptr. 10, 554 P.2d 330] [surviving joint tenant takes property unencumbered by lease entered into by deceased joint tenant].) In particular, respondents rely upon *Zeigler*, a case which also involved a judgment lien on a joint tenant's interest in real property. It is respondents' position that when Benjamin Dieden died, Schmidt's judgment lien expired and Conchita Dieden became the sole owner of the Berkeley property, free of the judgment lien.

As Schmidt points out, however, his judgment lien attached to Benjamin Dieden's interest as a tenant in common, before the creation of any right of survivorship. Until the lien was satisfied or extinguished, it was enforceable against Benjamin's interest in the Berkeley property regardless of who held that interest. Under Code of Civil Procedure section 697.390, subdivision (a), a subsequent conveyance or encumbrance of an interest in real property subject to a judgment lien does not affect the lien.[3] Further, under section 695.070, the judgment lien may be enforced against the property in the same manner and to the same extent as if there had been no transfer, even after the death of the judgment debtor. (*Id.,* § 695.070.)[4]

. Thus, when Benjamin and Conchita Dieden transferred their tenant in common interests to one another in 1994 and created a joint tenancy, she

___

[3]Code of Civil Procedure section 697.390, in pertinent part, provides: "If an interest in real property that is subject to a judgment lien is transferred or encumbered without satisfying or extinguishing the judgment lien: [¶] (a) The interest transferred or, encumbered remains subject to a judgment lien created pursuant to Section 697.310 in the same amount as if the interest had not been transferred or encumbered."

[4]Code of Civil Procedure section 695.070 provides: "(a) Notwithstanding the transfer or encumbrance of property subject to a lien created under this division, if the property remains subject to the lien after the transfer or encumbrance, the money judgment may be enforced against the property in the same manner and to the same extent as if it had not been transferred or encumbered. [¶] (b) If the judgment debtor dies after the transfer of property

took her interest in the property subject to the judgment lien. (See *In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 438 [110 Cal.Rptr.2d 615] [purchaser of property subject to judgment lien takes title subject to that lien].) Under the Enforcement of Judgments Law, the right of survivorship, an interest created after the judgment lien, had no effect with respect to the judgment lien. "When real property encumbered by a duly recorded abstract of judgment is transferred, the transferees are charged with constructive knowledge of the encumbrance and they take title to the property subject to the lien created by the abstract, not as bona fide purchasers." (*Federal Deposit Ins. Corp. v. Charlton* (1993) 17 Cal.App.4th 1066, 1069 [21 Cal.Rptr.2d 686].)

In fact there is some logical appeal to Schmidt's argument that after the transfer, the judgment lien could be enforced against the entire property because the property interest Benjamin conveyed to himself was subject to the lien (see, e.g., Code Civ. Proc, § 697.340, subd. (b)),[5] as was the interest conveyed to Conchita. Once again, however, it is the language of the Code of Civil Procedure sections 697.390 and 695.070 that controls. Under those sections, Schmidt may enforce his judgment in the same manner and *to the same extent as if the property had never been transferred.* (See *Oliver v. Bledsoe* (1992) 5 Cal.App.4th 998, 1009 [7 Cal.Rptr.2d 382] [lienholder's rights against the property remain as they were before the transfer].) Therefore, Schmidt retained his lien against a one-half interest in the property as if the transfer and Benjamin's death never occurred.

Respondents, having little ammunition to respond to Schmidt's arguments, fall back on the decision in *Zeigler, supra,* 52 Cal.App.2d 217. They cite both the holding in *Zeigler* that a judgment lien on a joint tenant's interest expires on that tenant's death, and language in *Zeigler* to the effect that a judgment creditor assumes the risk that the debtor tenant will die before the other joint tenant.

*Zeigler* is inapposite here. The judgment lien in *Zeigler* attached to an existing joint tenancy interest. There was no transfer of property from one form of ownership to joint tenancy. In *Zeigler*, a father and daughter owned real property in joint tenancy when a judgment was secured against the father and the creditor recorded an abstract of judgment. The daughter's right of survivorship preceded the judgment lien and was not affected by the

that remains subject to a lien created under this division, the money judgment may be enforced against the property as provided in subdivision (a)."

[5] Code of Civil Procedure section 697.340, subdivision (b), provides: "If any interest in real property in the county on which a judgment lien could be created under subdivision (a) is acquired after the judgment lien was created, the judgment lien attaches to such interest at the time it is acquired."

judgment lien. When the father died, the judgment lien terminated and the creditor no longer had any rights in the property. (*Zeigler, supra,* 52 Cal.App.2d at p. 220; see also *People v. Nogarr, supra,* 164 Cal.App.2d at p. 594 [lien of mortgage attached to interest of only one joint tenant expired upon death of that tenant].)

The *Zeigler* court concluded that when a judgment lien attaches to a joint tenant's interest, the creditor has a choice. The creditor can immediately execute and sell the interest of the judgment debtor, severing the joint tenancy. (*Zeigler, supra,* 52 Cal.App.2d at p. 221.) Or, the creditor can wait to see if the judgment debtor survives the cotenant, in which case the judgment lien will attach to the entire property. (*Ibid.*) If the creditor gambles on the judgment debtor's survival, the creditor assumes the risk of losing the lien. (*Id.* at pp. 221-222; accord, *Grothe v. Cortlandt Corp., supra,* 11 Cal.App.4th at p. 1324.)

*Zeigler*'s risk/reward analysis does not apply in the instant case. Under the Enforcement of Judgments Law, judgment liens on real property continue for 10 years (Code Civ. Proc., § 697.310, subd. (b)), and are renewable (*id.,* § 683.110 et seq.). Judgment liens cannot be avoided by transferring real property. (*Id.,* § 697.390.) Thus the law does not require a creditor to rush to execute on a debtor's real property.[6] Assuming Schmidt even had notice of the Diedens' transfer of the Berkeley property, any incentive he had to wait to see which tenant would die first was created solely by the Diedens. Though there is no suggestion in the record that the Diedens made the transfer to defraud Schmidt or any other creditor, the fact the transfer occurred should not operate to the detriment of Schmidt.

Schmidt's lien did not expire upon Benjamin Dieden's death; it remained valid and enforceable against a one-half interest in the property.

B. *First Nationwide's Request for Summary Adjudication*

First Nationwide asserts that even if Schmidt's judgment lien is valid, its deed of trust has priority. First Nationwide moved for summary adjudication below on the issue of priority of the liens on two separate grounds: (1) it was the senior lienholder under the doctrine of equitable subrogation; and (2) it was the senior lienholder because Schmidt's first abstract of judgment was void for failure to comply with the statutory requirements for abstracts. Both contentions became moot when the trial court found Schmidt's lien had terminated upon Benjamin Dieden's death.

[6]Nor should it. We see no point in encouraging creditors to rush to execute on a debtor's real property.

First Nationwide, however, citing the principle that this court may affirm a summary judgment on any correct legal theory (*Kramer v. State Farm Fire & Casualty Co.* (1999) 76 Cal.App.4th 332, 335 [90 Cal.Rptr.2d 301]), asks this court to direct the trial court to grant summary adjudication in First Nationwide's favor on the issue of priority of the liens.

As its name suggests, the doctrine of equitable subrogation invokes the court's equitable jurisdiction. The doctrine applies in a variety of circumstances when one person pays the debt of another. (See 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 169, 170, pp. 848-851; *Lawyers Title Ins. Corp. v. Feldsher* (1996) 42 Cal.App.4th 41, 46-50 [49 Cal.Rptr.2d 542].) First Nationwide claims the proceeds of the loan it made to the Diedens were used to retire a first position deed of trust; therefore, according to First Nationwide, it is entitled to assume the position of the retired debt.

Summary judgment motions usually raise matters of law, but not when the trial court grants or denies such a motion on the basis of equitable determinations. (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 110-111 [105 Cal.Rptr.2d 559].) The matter then becomes one of discretion, which this court reviews under the abuse of discretion standard. (*Ibid.*) " 'From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees.' " (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770-771 [110 Cal.Rptr.2d 861].)

Assuming the doctrine of equitable subrogation even applies in this case (see 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 172, pp. 853-854 [no recovery against innocent third party]), the trial court should be given the opportunity to balance the equities and exercise its discretion. This court will not consider the matter in the first instance.

As for First Nationwide's argument that the first abstract of judgment was void, there are disputed material facts on that question. First Nationwide points out that Schmidt did not list the Social Security numbers and driver's license numbers of the Diedens in his first abstract of judgment, as required by Code of Civil Procedure section 674. But that section only requires a judgment creditor to provide social security and driver's license numbers "if they are known to the judgment creditor." (*Id.*, § 674, subd. (a)(6); see *Keele v. Reich* (1985) 169 Cal.App.3d 1129, 1132 [215 Cal.Rptr. 756].) First Nationwide did not submit undisputed evidence that Schmidt knew that information. Schmidt marked a box on the abstract that indicated he did not know Conchita Dieden's Social Security number or driver's license number. He failed to mark a similar box next to Benjamin's name, but arguably that

omission was a mere clerical error. (See *Commonwealth Land Title Co. v. Kornbluth* (1985) 175 Cal.App.3d 518, 530-531 [220 Cal.Rptr. 774] [omission of date of entry of judgment from one of five abstracts of judgment obviously an inadvertent clerical error].) Most likely an evidentiary hearing will be required to resolve this issue.

### C.  *Attorney Fees*

Given our conclusion that Schmidt has a valid judgment lien, we will reverse the order denying attorney fees. We leave the determination as to whether Schmidt should be awarded fees, and if so, in what amount, to the trial court. (See Code Civ. Proc., §§ 685.040, 685.080.)

### III.

### DISPOSITION

The judgment in favor of First Nationwide is reversed. The order denying Schmidt's motion for attorney fees is reversed. Schmidt shall recover his costs on appeal.

Kay, P. J., and Rivera, J., concurred.

A petition for a rehearing was denied January 9, 2003, and the petition of respondent Conchita Dieden for review by the Supreme Court was denied March 19, 2003.